CULLEN *vs.* O'HARA, Adminstrator of ANN O'BRIEN, deceased.

Trover for $585 in gold coin. The plaintiff claimed the coin as Administrator of the estate of one B., who died possessed of it, and on whose death, and before the plaintiff became Administrator, it came into the possession of the defendant. The defendant claimed that it belonged to the estate of one O.; that O. died intestate; that he left no widow surviving him, and but one child, and that the defendant was the guardian of this child, and he insisted that as such guardian of O.'s sole next of kin, he was entitled to the coin as against the plaintiff. It did not appear that administration had ever been granted upon O.'s estate. *Held*, that conceding the facts claimed in defence, the plaintiff had the better right to the coin, and was entitled to recover.

*Held, further,* that the plaintiff was not estopped from maintaining the action for the whole of the coin, by the fact that after he became Administrator, he had, in his individual capacity, borrowed a portion of it from the defendant, each party's claim of right to it being fully known at the time the loan was made.

The possessor of personal property of an intestate may maintain trover for its conversion against a mere wrong-doer, or one having no better right than himself; and if the possessor die, his Administrator may also bring trover for a conversion of the property taking place after his intestate's death, and prior to his own appointment as Administrator.

Until administration and distribution, the next of kin of an intestate has no more right to the possession of the personal property of the estate than any mere stranger.

Error to Washtenaw Circuit Court. The case is fully stated in the opinion of the Court.

*O. Hawkins* and *H. J. Beaker*, for the plaintiff in error.

*E. C. Seaman*, for the defendant in error.

DOUGLASS, J., delivered the opinion of the Court.

This was an action of trover for divers pieces of gold coin, amounting in all to $585, and was brought by O'Hara as the Administrator of Ann O'Brien, deceased, against Cullen. The cause was tried by a jury. On the trial, the plaintiff below proved his appointment as Administrator ; that in November, 1848, his intestate died possessed of the money ; that on her death it came into the possession of the defendant, and that on demand made he refused to deliver it to the plaintiff.

The defendant proved that one James O'Brien, a brother of the plaintiff's intestate, died intestate in New York, in 1842 ; that he left no widow surviving him, and but one child, who was an infant, also named Ann O'Brien, and was his sole next of kin, and heir-at-law, and that he (the defendant) was the duly appointed guardian of this infant daughter.

For the purpose of showing that the money belonged to James O'Brien's estate, the defendant called one Catherine Vaughan as a witness, who testified as follows : " I knew Ann O'Brien " (the elder and plaintiff's intestate) " in her lifetime, and attended her during her last sickness ; I spoke to Ann and told her that she had better settle her affairs, and make a will. The reply was, she would not make any will, because, she said, she had nothing to will to any person ; she said the principal part of what was in her custody belonged to the estate of James O'Brien ; I counted the money after her death, and there was then $662.50, as near as I can recollect, of which she died in possession. I gave $585 of this money to the defendant.."

No evidence was offered to prove that administration had ever been granted upon James O'Brien's estate.

It was also proved on the part of the defence, that in September, 1849, the plaintiff below, with a full knowledge on

the part both of himself and the defendant, of all the facts and of the claims of each of them, in his individual capacity, borrowed $200 of this money from the defendant, and executed his bond and mortgage to secure its repayment, which mortgage has since been foreclosed.

The evidence being closed, the defendant below requested the Court to charge the jury that the plaintiff, by loaning the $200 from the defendant, and executing his bond and mortgage therefor, was estopped from maintaining this action. Also, that if the jury believed that any portion of the money in question was in the possession of the plaintiff when this action was commenced, the plaintiff was not entitled, in any event, to their verdict for such portion.

The Court declined to charge on either of these points as requested, but instructed the jury :

"That if they believed that Ann O'Brien, the plaintiff's intestate, shortly before her decease, did make the declaration testified to by Catherine Vaughan, they must determine in what manner she meant to be understood ; that there was no evidence in the case showing that any Administrator was ever appointed upon the estate of James O'Brien ; and if she meant to be understood that the money belonged to the estate of James O'Brien, and that it had come into the possession of the heir-at-law, or that she herself held it in trust for the heir-at-law, or that it belonged to her in her own right, the defendant, he being her guardian, would have a right to the possession of it. But if she meant to be understood that the money belonged to the estate of James O'Brien, and that she, Ann O'Brien, had taken possession of it in opposition to the rights of the heir, and so continued in the possession of it until the time of her death, the title, or at least the right of possession, would pass to the plaintiff as her Administrator, and not to the defendant's ward, and that the plaintiff would be accountable only to the Administrator of the estate of James O'Brien. That if she so took possession of the money,

she would have been in law what is denominated an executor, *de son tort*, and as such, would have been liable in a suit at law, not to the heir of James O'Brien, but only to the Administrator of his estate, or creditors, if there were any; that upon the death of a testator or intestate, the title of the personal property passes to the Executor or Administrator for the purpose of settling the estate, and that such a title is inconsistent with the right of an heir-at-law to maintain a suit against a stranger in the wrongful possession of the property of the estate."

To the refusal of the Court to charge as requested, and also to that portion of the charge given which is quoted above, the defendant below excepted, and the jury having returned a verdict in favor of the plaintiff, the cause was removed into this Court, by writ of error and bill of exceptions.

I. We see no error in the refusal of the Court below to charge as requested, in regard to the effect of the loan by the plaintiff of $200 of the money in question from the defendant, and the execution of his bond and mortgage therefor. This loan was made by him in his individual capacity, and we do not think it could operate to estop him from asserting his right to the money, as the Administrator of Ann O'Brien. Nor do we perceive how the plaintiff's possession of the $200 thus obtained, by loaning it from the defendant, would affect his right as Administrator to maintain trover for it against the defendant, if the money really belonged to the estate of his intestate. It appears to us that such lending of the money by the defendant to the plaintiff, was as much a conversion as if the loan had been made to any third person.

II. Questions of greater difficulty arise upon the exception to the charge actually given.

The inquiry presented by so much of the charge as was adverse to the defendant, is, whether, assuming that the

coin in question belonged to the estate of James O'Brien; that on his death it came into the possession of Ann O'Brien, the elder; that she kept the exclusive possession of it until her death; that James O'Brien died intestate; that no administration had ever been granted upon his estate;* that he left no widow surviving him, and but one child; and that the defendant was the guardian of this child: whether, in such case, the plaintiff, as Administrator of the estate of Ann O'Brien, the elder, was entitled to maintain trover against the defendant, who was guardian of the sole next of kin of James O'Brien, for a conversion of the money after the death of Ann O'Brien, the elder, and before the plaintiff's appointment as Administrator.

1. And first, upon the facts assumed, what were the rights of the plaintiff to the money in controversy?

When a man dies, his possession of property which he owned during life, is, of course, terminated; others come into the possession of it; ordinarily, his nearest friends and relatives, who are certainly the most fit persons to take charge of it. Whoever thus comes into the possession of any portion of the personal property of an intestate, after his decease, and assumes control over it, becomes responsible for it to the Administrator when appointed. He cannot safely deliver it to any one else, except the Administrator, or some one who shows a better right to it than himself. This must be so upon principle, for otherwise, the personal property of a decedent might easily be placed beyond reach before administration granted, and where no one could be found who had it, or was responsible for its value. And so are the authorities. (*Emery* vs. *Berry*, 8 *Fost.*, 483; 1 *Salk.*, 313; *Sharland* vs. *Mildon*, 5 *Hare*, 499; 2 *Bac. Abr.*, 387; 5 *Coke*, 336; *Edwards* vs. *Harben*, 2 *T. R.*, 597; *Paget* vs.

---

*It is assumed that no administration was granted, because there was no evidence of it, and it is not perceived how the lapse of ten years can afford presumption of it, in the absence of other evidence.

*Priest*, 2 *Ib.*, 97 ; *Campbell* vs. *Tousey*, 7 *Cow.*, 64 ; *White* vs. *Mann*, 26 *Maine R.*, 361 ; *Wilson* vs. *Hudson*, 4 *Harring.*, 168 ; *Hubbard* vs. *Fogartie*, 3 *Rich.* 413 ; *Whit* vs. *Ray*, 4 *Ired.*, 14 ; 1 *Saund.*, 265, *note.*) This mere possession of the personal property of a decedent, and consequent duty to preserve and protect it, entitles the possessor to the ordinary legal remedies against a mere wrong-doer ; that is, any one who interferes with the property without a better right. (1 *Ch. Pl.*, 11 *Am. Ed.*, 151 ; 2 *Greenl. Ev.*, § 637 ; *Amory* vs. *Delemaire*, 1 *Smith's Lead. Ca.*, 470, *and notes;* *Oughton* vs. *Seppings*, 1 *Barn & Ad.*, 241.)

It is, however, insisted that trover is not maintainable upon such a title, because, in that action, the plaintiff must allege and prove that the goods for which he brings suit are his, and that he is possessed of them as of his own property. But whatever doubts may have once existed on the subject, we regard it as now well settled, that although the action of trover is founded upon the right of property, if this right exist relatively, it need not be absolute ; that it is enough if the right of the plaintiff be better than that of the defendant, whatever it may be with regard to the rest of the world, and that possession will be sufficient evidence of right as against all who have neither right, nor rightful possession. See 1 Smith's Lead. Ca., 473, *et seq.*, where the authorities are very fully collected. (*Duncan* vs. *Spear*, 11 *Wend.*, 63 ; *Harper* vs. *Dement*, 9 *Gill*, 7 ; *Jeffries* vs. *Great West. R. W. Co.*, 34 *Eng. L. & Eq. R.*, 122 ; *Craig* vs. *Miller*, 12 *Ired.*, 375.) In Craig *vs.* Miller, the principle was applied to a case closely analogous to the present.

If the foregoing views are correct, it is clear, that upon the hypothesis as to the facts upon which the instruction was given to the jury, Ann O'Brien, during her lifetime, had such a title to the money in question as would have enabled her to maintain trover for its conversion by any one who had no better right.

The plaintiff, as her Administrator, has the same right of action for a conversion after her death, even though such conversion was before his appointment ; for the title of an Administrator, whenever appointed, takes effect from the death of the intestate. (*Babcock* vs. *Booth*, 2 *Hill*, 181; *Rockwell* vs. *Saunders*, 19 *Barb.*, *S. C. R.*, 473 ; *Welchman* vs. *Sturgis*, 13 *Q. B.*, 552; *Whit* vs. *Ray*, 4 *Ired.*, 14.)

2. The only remaining inquiry is, whether assuming that the money belonged to James O'Brien at the time of his death, that he died intestate, that no administration had ever been granted upon his estate, and that the defendant was the lawful guardian of the sole next of kin of said James O'Brien, the defendant as such guardian had a better right to the money than the plaintiff. Of course, his rights as against the plaintiff are coextensive with those of his ward, and the inquiry is as to what rights the next of kin of an intestate have in the personal property of the estate before administration.

It is well settled, both under our own and the English Statutes, that when a man dies intestate, his personal property does not, like his real estate, descend to his next of kin or heirs-at-law. It remains in abeyance until administration granted upon his estate, and is then, as we have before remarked, vested in the Administrator, as of the time of the death of the intestate. No title vests in his next of kin until his estate has been administered upon, and then they take the surplus remaining after payment of the debts of the intestate, and expenses of administration, each in his proportion, under the statute of distributions. (*R. S.*, 1846, *Ch.* 70; 2 *Steph. Com.*, 229, 233; 2 *Boov. Inst.*, 141; 1 *Will. on Ex.*, 546, 547; *Randall* vs. *Loring*, 23 *Alab. R.*, 751; *Roorbach* vs. *Lord*, 4 *Conn. R.*, 347; *Whit* vs. *Ray*, 4 *Ired.*, 14; *Craig* vs. *Miller*, 12 *Id.*, 375 ; *Per Parker*, *C. J. in Jewitt* vs. *Smith*, 12 *Mass.*, 309.) Until then, an heir or next of kin of the intestate, although having a right to his distributive share, has no right to the possession of either the whole or any specific portion of the

personal property. Nor, until distribution, can he maintain any action in respect to it, unless it be founded upon his own actual possession, and against a mere wrong-doer. (*Muir vs. The Trustees of the Leake & Watts Orphan Asylum*, 3 *Barb. Ch. R.*, 477.) In fact, his rights of possession and of action in respect to the personal property before distribution, are neither greater nor less than those of a mere stranger. It is claimed that a contrary doctrine is established by Hyde *vs.* Stone (7 *Wend.*, 354). There a son was allowed to maintain trover for personal property of which his father had died possessed at least nineteen or twenty years before, there being no direct evidence as to whether there had been administration, but it appearing that the defendant had, on two occasions, admitted the plaintiff's right to the property. Undoubtedly that case was correctly decided upon its own peculiar circumstances. The admissions of the defendant rendered other proof of the plaintiff's title unnecessary. We do not regard the case as deciding that the next of kin have any right to the possession of the personal property of an intestate before administration and distribution, and if it did we should be compelled to disregard it as contrary to well settled principles.

For the foregoing reasons, a majority of the Court are of the opinion that there was no error either in the refusal of the Court below to charge as requested, or in so much of the charge given as was adverse to the defendant. The judgment below must therefore be affirmed with costs.

There is much seeming hardship in this result, if the money in controversy really belonged to the estate of James O'Brien, but this hardship the defendant might have easily avoided by taking out letters of administration upon the estate.

Wing, Green, Martin, and Bacon, concurred.

Pratt and Copeland, dissented.

Johnson did not participate in the decision, having decided the cause in the Court below.