### CITY OF MADISON v. DALEY.

#### (Circuit Court, D. Indiana. November 29, 1893.)

#### No. 8,913.

1. EMINENT DOMAIN—CONDEMNATION—STATUTORY REQUISITES.
   The provision of Rev. St. Ind. § 3167, that city councils, before referring any matter of condemnation to the city commissioners, shall first refer it to an appropriate committee, to examine and report thereon, is mandatory, and failure to comply therewith is fatal.

2. SAME—IMPLIED POWER—MUNICIPAL CORPORATIONS.
   Statutory power in a city to construct wharves, docks, piers, etc., (Rev. St. Ind. § 3106,) does not imply power to condemn for public use an existing private wharf.

3. SAME—REQUISITES.
   The filing of a map and profile of the work to be done as a preliminary to the condemnation of lands for the construction of harbors, etc., is made jurisdictional by Rev. St. Ind. § 3134, and failure therein renders the proceedings void.

At Law. These were proceedings by the city of Madison to condemn and appropriate the defendant's wharf property on the Ohio river in the city of Madison for the use of said city as a public wharf. Appealed from the city council, which sustained the condemnation proceedings, to the circuit court of Jefferson county, Ind. Removed into this court by the defendant on the ground of diverse citizenship. The cause came on to be heard on objections filed by the defendant pursuant to the practice provided for in the act under which the proceedings were carried on. Objections sustained, and judgment for the defendant.

Perry E. Bear and Sulzer & Bear, for plaintiff.

C. A. Korbly and W. O. Ford, for defendant,

Cited the following authorities: Allen v. Jones, 47 Ind. 438; Waterworks v. Burkhart, 41 Ind. 364; Dyckman v. City of New York, 5 N. Y. 434; Payne v. Railroad Co., 46 Fed. 559; City of Anderson v. Bain, 120 Ind. 254, 22 N. E. 323; Cooley, Const. Lim. (5th Ed.) p. 653; 2 Dill. Mun. Corp. (4th Ed.) §§ 603–605.

BAKER, District Judge, (orally.) The common council of the city of Madison, on the 4th day of January, 1893, adopted a motion "that the committee on wharves instruct the city commissioners to condemn the property known as the 'Daley Wharf Property,' to be used for city wharf purposes." Without further action by the common council, the city commissioners were convened, made an exam-

ination of the premises, and decided in favor of condemning the wharf property for the purposes stated, and they awarded $1,500 compensation to the owners of the wharf. On the 20th day of April, 1893, the city commissioners made their written report of their action to the common council of the city of Madison in proper form. At this session of the common council the following action was taken:

"Mr. Johnson moved that the action of the commissioners be concurred in and spread on record, and the city clerk be instructed to draw an order on the treasurer for the amount as set by the city commissioners, when ordered by them and the city attorney to do so. The yeas and nays were called, and the motion carried by the following vote: Yea: Tuttle, Bishop, Williams, Johnson, Torrance, Page, and Klein,—seven. Nay: Bartram,—one."

On the 4th day of May, 1893, at another meeting of the council, the following further proceedings in reference to this matter were had:

"The following resolution offered by Sol J. Bear was read, and on motion of Mr. Thomas adopted: 'Resolved, that the common council, now in session, accept the report of the city commissioners wherein they met on the 12th and 13th of April, 1893, to hear testimony touching the value of the property to be appropriated known as the "Daley Wharf," and belonging to Daley and unknown owners, and assessed a valuation on said property of $1,500, to be paid to Daley and unknown owners.' Passed May 4th, 1893."

On the 13th of May, 1893, the defendant, George H. Daley, the owner of the wharf, took an appeal from the order of the city council condemning and appropriating it for public uses, to the circuit court, and perfected his appeal by filing a bond and a transcript of the record of said court in accordance with the statute. At the proper time the defendant, Daley, removed the cause into this court on the ground of diverse citizenship. After the appeal had been perfected, to wit, on the 20th day of July, 1893, the city council undertook to correct the record of its proceedings of the 4th day of May, 1893, by adopting a resolution which recited the former resolution, and then proceeded as follows:

"Now, therefore, be it resolved by the common council, now in session, that that part of the record referring to passage of said resolution, to wit, 'Passed May 4th, 1893,' be corrected to read as it should have read, and in accordance with the facts, as follows: 'Passed May 4th, 1893, by an unanimous vote of all the members of the common council; that is, twelve of the twelve members thereof voting "Aye." ' "

In this court the defendant has filed exceptions denominated by the statute (Rev. St. 1881, § 3180) "a written statement of his objections to the proceedings of the common council and commissioners." These objections are substantially as follows: (1) That the city council did not refer the matter of said proposed appropriation of defendant's real estate to a proper committee to examine said matter; and no report of any such committee in favor of the expediency of referring the said proposal to condemn said real estate to said city commissioners was made before the reference thereof to them. (2) That the said council did not within 28 days after the filing of the report of the said commissioners, in which they de-

termined to condemn said property and award $1,500 compensation to its owners, by a vote of two-thirds of said city council, on a yea and nay vote, by a resolution determine to accept said report, and make said appropriation of the defendant's property. (3) That the statute under which the city of Madison is incorporated does not, nor does any other statute of the state of Indiana, confer upon said city any statutory power to condemn and appropriate the real estate of a private citizen for a public wharf, against his consent. And the defendant has not consented to said proceedings. I will consider these objections in their order.

First. Section 3167 of the Revised Statutes of Indiana, under which the plaintiff attempted to proceed, is as follows:

"Before any matter of the opening, laying out, or altering of any street, alley, highway or water course, or of the vacation thereof, shall be referred to the city commissioners, the common council shall refer the matter to an appropriate committee, who shall examine the matter, and report at the next meeting of the common council upon the expediency of so referring; and if the common council shall determine, by a two-thirds vote, to submit the said matter to the commissioners, it shall be so ordered, and shall thereupon be referred to said commissioners, as hereinbefore provided; but no such matter shall be submitted unless so ordered by a two-thirds vote of such common council."

Now, it is not claimed that this requirement of the statute was complied with by the common council of the plaintiff before referring the matter of the condemnation of the defendant's wharf to the city commissioners. It is contended by the counsel for the defendant that this provision of the law is mandatory, and that the preliminary reference therein required is jurisdictional. The object of this statutory requirement is twofold: (1) In order that the common council may, by the careful and deliberate investigation of one of its committees, acquire a full knowledge of all the facts and circumstances surrounding the proposed acquisition of property by the exercise of the power of eminent domain. (2) For the protection of the rights of the owner of the property which it is proposed to condemn; for the law is jealous of the rights of property holders, and adopts these formalities of procedure for their protection. With these objects in view, I will consider the language of section 3167, supra. It is that: "Before any matter of the opening," etc., "shall be referred to the city commissioners, the common council shall refer the matter to an appropriate committee," etc. "Shall" will be construed "may" where no public or private right is impaired by such construction; but where the public are interested, or where the public or third persons have a claim de jure that the act shall be done, it is imperative, and will be construed to mean "must." The right of eminent domain—that of taking the property of a private citizen without his consent, and devoting it to the use of the general public—is an exercise of the highest act of sovereignty. It can only be called into existence by the authority of the legislature, and must be exercised in the mode and by the tribunal provided by law. This statute prescribes the mode, and I have no doubt whatever that it is mandatory. The failure of the city council to comply with it is fatal.

Second. The next objection to these proceedings is that the common council did not comply with the requirement of the statute in accepting the report of the city commissioners and making the appropriation. The statute on this subject is as follows:

"If the common council, within twenty-eight days after the filing of said report, shall, by a vote of two-thirds of the members thereof, determine to make the appropriation of the real estate for such improvement, they shall enact a resolution accepting said report, and requiring the city clerk to deliver a certified copy of so much thereof," etc., "to the city treasurer." Section 3174, Rev. St. 1881.

"On the passage or adoption of any by-law, ordinance or resolution, the yeas and nays shall be taken and entered on the record." Section 3099, Id.

It appears from an inspection of the record that the action of the common council on the 20th day of April, 1893, was nugatory for two reasons: (1) Its action was on motion, and not by resolution; (2) there were but seven votes in favor of the motion, while the statute requires two-thirds. Seemingly to remedy this defect, on the 4th day of May, 1893, at a subsequent meeting of the common council a resolution to accept the report of the city commissioners was introduced, and it was adopted by a viva voce vote. This was evidently insufficient, because the statute requires the yeas and nays to be taken, and entered upon the record. At a still later meeting of the common council, on the 20th day of July, 1893, an entry nunc pro tunc as of May 4, 1893, was ordered to be made, which contained a recital of what was done with reference to this resolution in the following words: "Passed May 4th, 1893, by an unanimous vote of all the members of the common council; that is, twelve of the twelve members thereof voting aye." Did this help the matter? The statute (section 3174) required the council to enact a resolution accepting the report, and on the passage of any resolution the statute (section 3099) required the yeas and nays to be taken, and entered upon the record. The recital of the clerk that the resolution passed by an unanimous vote of all the members of the common council who voted "Aye" was not in terms taking the ayes and noes, and entering them upon the record. To take the ayes and noes means to call the roll, and to enter upon the record the names of the members voting for and against the resolution. The question turns upon the construction to be given to the statute requiring a yea and nay vote. Is it mandatory or directory? The authorities are not uniform. In Indiana it has been held to be mandatory. City of Logansport v. Crockett, 64 Ind. 319; City of Delphi v. Evans, 36 Ind. 100. See, also, in Colorado, Sullivan v. City of Leadville, 11 Colo. 483, 18 Pac. 736. And see, also, in North Dakota, O'Neil v. Tyler, 53 N. W. 434. The contrary rule obtains in New York. Striker v. Kelly, 7 Hill, 9; 1 Beach, Pub. Corp. 494. While I am inclined to the opinion that the proper construction is to hold the requirement to be mandatory, and that the recital that all of the members of the common council voted "Aye" is not equivalent to entering the ayes and noes on the record, yet, as the question is not entirely free from doubt, and its solution is not necessary to the decision in this case, I will not pass upon it.

Third. The main question in this cause, however, which underlies all the others, is, has the city of Madison the power to condemn private property for its use as a public wharf? It is conceded that the statute does not, in express terms, confer this power upon the city. It is not necessary, however, that it should have been conferred in express words; it is sufficient if conferred by a necessary or reasonable implication in the grant of other powers. When is one power implied in the grant of another? It is when the latter cannot be exercised or carried into effect without the exercise of the implied power. Anything within the manifest intention of the makers of the statute is as much within the statute as if it were within the letter. Stowel v. Zouch, 1 Plow. 366; U. S. v. Freeman, 3 How. 565. Implied powers are such as are necessary to carry into effect those which are expressly granted, and which must, therefore, be presumed to have been within the intention of the legislative grant. 1 Beach, Pub. Corp. 637. If the legislature were to grant charters to two railroad companies, authorizing each to build a railroad through a narrow canon from point A to point B, and the nature of the passage was such that at one or more points there would be room for one railroad track only, then, although one of these corporations had entered the canon first to build its road over these places, the other would have an undoubted right, under the legislative grant, to occupy the same places for its track, because this must, from the necessity of the case, have been in the legislative mind when it granted both charters to construct the two roads over the same identical ground. Now, it is claimed by counsel for the city that the thirty-fourth subdivision of section 3106 of the Revised Statutes of 1881 contains the implied power to condemn the defendant's wharf. This clause of the statute confers power on the city to establish and construct wharves, docks, piers, etc. How establish and construct a wharf? Not by taking the defendant's wharf, which is already established. There is nothing in this record to show that there is an imperative necessity to take this wharf. The court knows the city has power to buy the land necessary for a wharf. For aught that appears here, it could have bought this identical wharf from the defendant for a fair and reasonable price. The power to establish and construct a wharf is susceptible of execution without the exercise of the power of eminent domain. Nor does the statute referred to in the argument, in reference to harbors, confer the power attempted to be exercised in this case. This statute is as follows:

"Sec. 3131. Any incorporated city in this state, situated upon or adjoining any harbor connected with a navigable stream or lake, or upon any natural water course which, by dredging or otherwise, may be made into a harbor, is hereby authorized to construct an entirely new harbor, or may extend, widen, deepen, repair, or otherwise improve any harbor now made, partially made, or in process of construction."

And section 3135 confers power on such cities to appropriate so much of the land of any person or persons, abutting on or adjoining any natural water course which it is proposed to make into a harbor, necessary to the construction and completion thereof; and

the land which is appropriated shall be particularly described on the plat and profile thereof. The previous section (3134) requires the common council to cause the city engineer to make a map and profile of the work to be done, and an estimate of the cost thereof, and to file them in the office of the city clerk; and section 3136 provides that the appropriation shall be deemed to be made as soon as such plat and profile are filed in such clerk's office; and that thereafter, if the city and landowners affected thereby shall be unable to agree upon the value of the land taken and damages sustained or benefits arising therefrom, the city may condemn the land thus appropriated in the same manner as lands are now condemned by cities for streets and alleys."

Even if the word "harbor" could be wrenched or tortured into meaning "wharf," the plaintiff must fail, because the statute just referred to makes the condemnation of the defendant's land depend upon the making and filing of a map and profile of the harbor in the office of the city clerk, describing the land by metes and bounds, so that a surveyor could identify and locate it. This is commonly called the "instrument of appropriation," which must set forth the facts prescribed by the statute. The filing of this instrument is jurisdictional, without which the proceedings are null and void. The construction contended for by plaintiff is not only liberal, but is too lax to be tolerated. It would subvert every canon of statutory interpretation to hold that this statute would authorize the proceedings of the plaintiff. The exercise of the right of eminent domain is one of the attributes of sovereignty, and can only be employed in the mode and by the persons authorized by the lawmaking power of the state. The private citizen cannot be deprived of the ownership of his property, even for a public use, except under statutory authority, strictly pursued, and upon just compensation made.

In this case the common council of the city acted without statutory authority, and for this reason the defendant's exceptions must be sustained. Judgment accordingly.