SALTER *v.* SUTHERLAND.

123    225
s125    663
123    225
s81ᴺᵂ1070

ESTATES OF DECEDENTS—CONVERSION—RIGHT OF ACTION.
  Where a husband, on the death of his wife, takes possession of
  chattels held by her under an arrangement with the owner
  giving her the use of them for her lifetime only, the owner
  alone may maintain replevin, no right of action accruing
  to the administrator of the wife's estate.

Error to Gratiot; Daboll, J. Submitted February 1,
1900. Decided March 6, 1900.

Replevin by Marvin R. Salter, administrator of the
estate of Julia E. Sutherland, deceased, against Daniel
M. Sutherland. From a judgment for defendant on ver-
dict directed by the court, plaintiff brings error. Af-
firmed.

*John T. Mathews* and *John M. Everden* (*Cahill &
Wood*, of counsel), for appellant.

*Searl & Kress* and *George P. Stone*, for appellee.

MOORE, J. Lorenzo Squire was, prior to 1895, the
owner of a farm, upon which he resided with his wife and
daughter. His wife died, and his daughter continued to
live with him. The daughter married the defendant,
Daniel M. Sutherland, in February, 1895. It is the claim
of the plaintiff, as stated by his counsel, that:

"In April after the marriage, Mrs. Sutherland said to
her father: 'I don't want to go away; I want to stay
here upon the farm with you.' This conversation was
had in the presence of Aaron Squire, his wife, Nettie, and
the defendant. The old gentleman replied to her, saying:
'You may remain in my home here, and occupy it with
me as your home, and live with me, and take care of me
during my life. You can use my household effects, and I

will turn over to you the use of my farm here, and you to pay the taxes, and keep it in good condition; and I will also turn over to you for that purpose—for the purpose of working the farm—my personal property here upon the farm [which was then and there enumerated], to be used, kept, handled, and husbanded upon my farm, for the mutual good of yourself and me; and, if you survive me, then this property, or whatever shall remain of it, shall be yours at the time of my death.' This property, and the money arising from the sale of personal property and the use of the farm, during the life of Lorenzo Squire, were to be under the joint supervision and control of Julia and her father; and, in his language used to her at the time, while she might have the active management of the property, he proposed to keep his hand upon matters as long as he lived. It was agreed that the personal property should be kept in good condition and repair, and replaced by other stock or new implements when needed. In other words, Julia was to become trustee for her father of the personal estate then turned over to her, with accumulations, the use of the farm, and its proceeds, out of which she should render to her father his support, care, nursing, and maintenance, pay the taxes upon the farm and personal property; and at his death, if she should have fulfilled the conditions of the trusteeship, she should become absolute owner of the property, or what should remain of it, which might be left after the payment of all expenses of the old gentleman living. Julia consented to this arrangement, and accepted possession of the property in the manner and relation proposed, and occupied it under that agreement until in January, 1898, when she died."

It is not claimed the father ever parted with his title to the property, but it was to remain in him until his death. After the death of Mrs. Sutherland, Mr. Salter was appointed her administrator, and, with the consent of Lorenzo Squire, brought replevin for some of the personal property turned over to Mrs. Sutherland by her father, which it was claimed was unlawfully detained by Mr. Sutherland. The plaintiff gave testimony tending to establish the above state of facts. No testimony was introduced on the part of the defendant.

The trial judge was of the opinion that, inasmuch as Mrs. Sutherland was not the owner of the property, and

only had the right to the use of it during her lifetime, the title remaining in the father, he, and not the administrator, should have brought the suit, and directed a verdict in favor of the defendant. The plaintiff, through his counsel, says:

" The circuit judge lost sight of an important consideration. Mrs. Sutherland having been intrusted with this property merely to use, keep, preserve, and account for, she had no right, under the arrangement with her father, to give the property to her husband, or to sell it to him or any one else. If she had done so, the father might have reclaimed it from the husband by a suit in replevin. But he was not bound to do so; he might have sued his daughter in trover for the conversion of the property. At her death, her husband, naturally succeeding to the temporary possession of the property, claimed it as his own, and refused to give it up to the administrator on demand. The record does not disclose the nature of his claim, but that is not important, inasmuch as the court held that the plaintiff could not recover in any event. Under the case made by the plaintiff, the question is: Was the estate of Mrs. Sutherland liable to be charged with the value of the property if it was not produced and turned over to Mr. Squire, the owner? Clearly, it was, if she had given it to her husband, or otherwise disposed of it contrary to the agreement under which she held it. Mr. Squire was not bound to search for and reclaim the property from strangers. He had a right to call upon the administrator to turn the property over to him, and, if he failed, Mr. Squire would have had a claim against the decedent's estate for the value of it."

They urge that the plaintiff in this case, to protect the estate of which he is administrator, has a right to get possession of this property, so as to turn it over to Mr. Squire, if he is entitled to it, or to whoever is entitled to it.

It is said that under section 10117, 3 Comp. Laws 1897, the action of replevin survives, and that, when the statute provides that a cause of action shall survive, it is equivalent to saying an administrator may sue on it; citing *Wales* v. *Newbould*, 9 Mich. 45; *Rogers* v. *Windoes*, 48 Mich. 628 (12 N. W. 882). The record does not

show defendant converted any of this property during the lifetime of his wife, so that she might have brought suit during her lifetime; so that, so far as is disclosed here, she had no right of action against him to which the administrator would succeed by virtue of the statute. She had no title to the property; that was retained by her father. Her administrator, if he succeeds in getting possession of the property, could not sell it to pay the debts of the deceased, if there were any. As to the claim that Mr. Squire might look to the administrator of the estate for the property, and, if it was not turned over to him, would have a claim against the estate, are the facts such as to warrant that claim? Mrs. Sutherland did not convert the property in her lifetime, but simply made use of it as she had a right to make under the contract. Her father would have no claim by reason of anything she did. The contract did not provide that the heirs of Mrs. Sutherland, or her administrator, should have any right to the control or possession of the property. The administrator never has had it in his possession, and, of course, has never converted it. How, then, can there be any claim against the estate because the administrator does not turn over what never came to him, and to the possession of which he was not entitled by virtue of the contract?

We have not overlooked the case of *Cullen* v. *O'Hara*, 4 Mich. 132. That case was an action of trover, in which the administrator claimed the property as administrator of the estate of one B., who died possessed of it. The defendant claimed it belonged to the estate of one O., who died intestate, leaving no widow, and but one child, of whom defendant was guardian. He insisted that as such guardian he was entitled to the property as against the plaintiff. No administrator had been appointed upon the estate of O. In that case the court said the rights of defendant were co-extensive with those of his ward, and added:

"When a man dies intestate, his personal property does not, like his real estate, descend to his next of kin or heirs

at law. It remains in abeyance until administration granted upon his estate, and is then, as we have before remarked, vested in the administrator as of the time of the death of the intestate. No title vests in his next of kin until his estate has been administered upon, and then they take the surplus remaining after payment of the debts of the intestate and expenses of administration, each in his proportion, under the statute of distributions.  * * * Until then an heir or next of kin of the intestate, although having a right to his distributive share, has no right to the possession of either the whole or any specific portion of the personal property.  * * * In fact, his rights of possession and of action in respect to the personal property before distribution are neither greater nor less than those of a mere stranger."

For the foregoing reasons, the majority of the court held the plaintiff could maintain the action.

In this case there was no claim that the property belonged to the estate of Mrs. Sutherland; it was admitted it belonged to Mr. Squire; so that the case of *Cullen* v. *O'Hara, supra*, is not authority for maintaining this action.

In *Smiley* v. *Allen*, 13 Allen, 465, a coroner came into possession of property found upon the body of a person killed by an accident. He sought to defend against the owner of the property, who brought replevin, upon the ground that it was his duty to deliver the same to the administrator of the estate of the deceased person. It was shown upon the trial that the plaintiff delivered the property to the deceased, and permitted him to use it, as a favor and an act of friendship, without any stipulation as to the length of time he should be allowed to do so. The court held:

"The deceased person was a gratuitous bailee. The articles were lent to him by the plaintiff, subject to be reclaimed by her at any moment. His death did not in any way affect or change her right of property, or of immediate possession on due demand.  * * * The administrator of the person deceased had no right or title in them, nor could he lawfully claim to retain possession of

them as against the plaintiff. There was no lien on them in favor of the intestate's estate. The bailment was at an end, and the right of the plaintiff to resume possession was absolute. We know of no principle or rule of law by virtue of which an administrator can claim a right, as against the owner, to receive or take possession of property belonging to another person, which was in the hands of his intestate at the time of his death, and which the latter would have been bound to deliver to the former at any moment on demand."

See, also, *Ring* v. *Neale*, 114 Mass. 111 (19 Am. Rep. 316).

If *Smiley* v. *Allen* is rightly decided, Mr. Squire not only held the title to this property, but he was also entitled to its possession. Mrs. Sutherland was his bailee. She was entitled, if she complied with the conditions under which she held it, to the possession of the property during her life. Her death terminated the bailment. Mr. Squire could at once assert, not only title to the property, but his right to the possession of it. The administrator never had possession of the property. He has no title to it. He has no right to the possession. This being so, we think a proper disposition was made of the case.

Judgment is affirmed.

The other Justices concurred.