*In re* REIDY'S ESTATE.

SHATTUCK *v.* WATSON.

1. ESTATES OF DECEDENTS — EXECUTORS AND ADMINISTRATORS — TITLE TO PERSONAL PROPERTY.

> Title to personal property of a decedent, testate or intestate, vests in the executor or administrator, until the estate is fully settled and distributed, or until he parts with title.

2. SAME—CLAIMS—EXPENSES OF ADMINISTRATION.

> In the absence of a special contract by the wife and sole legatee of decedent, to pay for services of a clerk or manager in running the drug store of deceased, such services constitute a claim against the estate of the husband, and are not a claim against the wife's estate; even though she conducted the business on behalf of her estate and with the consent of his administrator, who charged purchases and other disbursements in connection with the business to the estate.

3. DRUGGISTS—PHARMACISTS—STATUTES.

> Within the meaning of the pharmacy law (2 Comp. Laws, § 5303 *et seq.*, as amended by Act No. 332, Pub. Acts. 1905), a person in charge of a country store, where drugs and other merchandise are retailed, is required to be a registered pharmacist, although the stock of drugs is small and the sales few.

4. SAME—CONTRACTS—ILLEGALITY.

> And a person, not a registered pharmacist, may not recover for services rendered a decedent in conducting such drug business, since a contract founded on an act prohibited by statute, under penalty, is void, although not expressly declared by the law to be invalid.

Error to Shiawassee; Miner, J. Submitted October 21, 1910. (Docket No. 51.) Decided December 30, 1910.

George O. Shattuck presented a claim against the estate of Emma Reidy, deceased, which was disallowed by the commissioners on claims. Claimant appealed to the circuit court where judgment was rendered for claimant.

John A. Watson, administrator of said estate, brings error. Reversed, and no new trial ordered.

*Franz C. Kuhn,* Attorney General, and *J. Shurly Kennary,* Assistant Attorney General, for appellant.

*Austin E. Richards* and *W. J. Parker,* for appellee.

McALVAY, J. Emma Reidy died intestate December 26, 1908, leaving an estate the amount of which does not appear from the record. She left no heirs, and the estate escheats to the State of Michigan. This estate, or a considerable part of it, came to her through the will of her husband, Michael Reidy, who died March 20, 1907, leaving his wife sole devisee and legatee under his will. On July, 18, 1907, the Old Corunna State Savings Bank, a creditor, caused a petition to be filed asking for a special administrator for the estate of Michael Reidy, for the reason:

"That said estate consists largely of a stock of drugs, drug business fixtures, etc., and needs the immediate care and attention of some proper person authorized by law to look after, care, and preserve the same, and without such attention and care, petitioner fears there will be waste and loss which may result to the injury of the creditors of said estate."

Upon this petition William J. Parker was appointed special administrator July 18, 1907. On the next day a will was produced and filed for probate. It was duly probated, and on August 19th, following, William Curry was appointed administrator with the will annexed of the estate of Michael Reidy, deceased. All of the records of the probate court are not printed in this record; but it appears that the personal estate which came into his hands, consisting largely of a stock of drugs, sundries, and store furniture and fixtures, was duly inventoried. The estate was administered by him, and his final account was allowed by the probate court June 5, 1908. In this final account it appears that he charged himself as follows:

To the value of the personal estate as per inventory_$1,600 37
To income and receipts from sales of merchandise_  306 94
                                                    ─────────
    Total receipts_____$1,907 31

Among other items he claimed credit for and was allowed is the following:

By paid claims against said estate for merchandise
    current bills_____$128 18

Along with said final account, among other receipts considered with it, was filed the following:

"CORUNNA, MICHIGAN, May 28, 1908.
" Received of William Curry, administrator of the estate of Michael Reidy, all goods, chattels, stock in Corunna Furniture Co., and all other property belonging to or remaining in said estate. I hereby consent that he may be discharged as such administrator.
                                    "EMMA REIDY."

After the death of Emma Reidy, and while her estate was in course of administration, there was filed with the commissioners on claims, by the claimant in this case, the following claim:

Emma Reidy Estate,
                          To George O. Shattuck, Dr.
To services from March 22, 1907, to June 28, 1908, 66
    weeks, at $9.00_____ _____$594 00
From June 28, 1908, to December 26, 1908, 26 weeks,
    at $5.00 _____ 130 00
                                                        ─────────
    Corunna, June 29, 1909.                            $724 00

This claim was disallowed by the commissioners. Claimant appealed to the circuit court, where he recovered a judgment for the full amount claimed. A motion for a new trial was made and denied. A reversal is asked in this court by the administrator on account of errors assigned. In the consideration of these errors, such further facts contained in this record as may be necessary will be stated.

The first item of this claim covers practically the time between Michael Reidy's death and the closing of his es-

tate, and during this time claimant testifies that he devoted his entire time to the business conducted in this store.

Appellant contends that claimant cannot recover against intestate's estate for the first item of his claim for services, for the reason that such services were rendered the estate of Michael Reidy, and might be a proper charge against that estate, and could not be made against the estate of Emma Reidy, except under an express contract.

The first proposition is answered by claimant, by insisting that this personal property was, after the death of her husband, the property of Emma Reidy, and remained continuously in her possession and under her control. The record shows that Mrs. Reidy, after Mr. Reidy's death, by permission of the administrator, conducted this business; but it does not show that it was conducted as the business of Mrs. Reidy. It appears without dispute that the income and receipts from sales in this business were accounted for by the administrator; that he claimed and was allowed the current bills for merchandise and other expenses and charges paid by him, including taxes. The testimony of the administrator is that these current bills for merchandise represented purchases of stock made by Mr. Reidy and put in the store.

The general rule is that title to personal property of a decedent, testate or intestate, vests in the personal representative until administration is completed and the estate is fully settled and distributed, or until he chooses or is forced to part with it earlier. 18 Cyc. p. 353, and cases cited. This rule had been recognized in this State and in intestate cases has always been followed. *Cullen* v. *O'Hara*, 4 Mich. 138; *Miller* v. *Clark*, 56 Mich. 341 (23 N. W. 35); *Parks* v. *Norris*, 101 Mich. 76, 77 (59 N. W. 428). The record shows that the administrator did not part with this property until he received the receipt of Mrs. Reidy accepting the same upon closing the estate. *Wheeler* v. *Hathaway*, 54 Mich., at page 549 (20 N. W. 579). Claimant's demand for the first charge of his bill

in this case should have been presented against the estate of Michael Reidy, unless the record shows a contract on the part of Mrs. Reidy intending to bind her separate estate for such services. The evidence does not establish such a contract. It is not sufficient in this case to prove that claimant rendered services which might support an implied contract. It must show a special contract with Mrs. Reidy. It is not a question of a dispute in the testimony upon the contract, but the absence of testimony showing such contract. This question was presented upon the motion for a new trial and in an exception to the charge which submitted the question. There was no evidence of such a contract. The court was in error in submitting the question to the jury.

Appellant claims that claimant cannot recover against the estate of Mrs. Reidy upon the second item of his claim because the services for which he makes claim were performed by him while he was in charge of a drug store, and engaged in the business of selling drugs contrary to the provisions of the pharmacy law of this State. It is admitted that at the time in question claimant was not registered and licensed under this law, but the contention on his part is that he was not within the prohibition of the law for the reasons:

(*a*) That he was not in charge of a drug store.

(*b*) That he was not in charge of the sale of drugs, medicines, or poisons.

(*c*) That he was not employed in dispensing, compounding, or retailing of drugs, medicines, or poisons.

This statute (Act No. 134, Pub. Acts 1885, 2 Comp. Laws, § 5304 *et seq.*) as amended by Act No. 332, Pub. Acts 1905, defines a "pharmacy" or "drug store" as follows:

"SEC. 8. From and after the taking effect of this act, every place in which drugs, medicines or poisons are retailed or dispensed or physicians' prescriptions compounded, shall be deemed a pharmacy or drug store, and the same shall be in charge of and under the supervision

of a registered pharmacist, and subject to the provisions of this act."

All of the testimony upon this subject describes this store as a drug store within the above definition. There is no dispute but that drugs, medicines, and poisons were retailed there; that claimant was practically in sole charge. Sales of drugs were proved to have been made by him, and, in cases where the local physician helped himself to such medicines or poisons as he needed at the prescription case, claimant always received the pay therefor. There is no dispute but that he was in charge of this place of business. The claim is that he was not in charge of that part under the prohibition of this law. The record without dispute shows that he weighed and measured drugs which were being sold at retail in this place. Section 14 of this act provides:

"It shall be unlawful for any one but a registered pharmacist, under this act, * * * to have charge of, engage in or carry on for himself or for another, the dispensing, compounding, or sale of drugs, medicines or poisons, anywhere within the State."

Section 15 has the further provision:

"Except as prescribed by the provisions of this act, it shall not be lawful for any person * * * to engage in, conduct, carry on or be employed in the dispensing, compounding or retailing of drugs, medicines or poisons within this State."

Section 32 makes a violation of any of the provisions of this act a misdemeanor, and, upon conviction, subject to a penalty not to exceed $100 or imprisonment in jail not to exceed 90 days, or both, in the discretion of the court. Such legislation has been enacted to protect the lives and health of the inhabitants of the State, and is not only proper but actually necessary. No question is raised as to the validity or the constitutionality of this law. In the performance of these services claimant was engaged in doing things prohibited by this statute. In applying this law to a specific case, the fact that the stock of drugs and

sundries amounted to but $600, and that the sales were not many or large, cannot be considered. The law includes all drug stores and all unlawful sales of the prohibited articles. In the performance of those services for which claimant recovered against the estate of Emma Reidy, he was engaged in performing acts prohibited by this statute, and he cannot recover.

It is a well-settled principle of law that all contracts which are founded on an act prohibited by a statute under a penalty are void, although not expressly declared to be so. *O'Donnell* v. *Sweeney*, 5 Ala. 467 (39 Am. Dec. 336). The same principle has been recognized by this court. *Niagara Falls Brewing Co.* v. *Wall*, 98 Mich. 158 (57 N. W. 99), and cases cited.

The court was in error in denying appellant's motion to take the case from the jury for the reasons above stated. An instruction should have been given that no recovery could be had.

The judgment of the circuit court is reversed, and, because in this case a new trial cannot affect the result here determined, a judgment for appellant will be entered in this court against claimant, without costs.

HOOKER, MOORE, BROOKE, and BLAIR, JJ., concurred.