SAUDER *v.* DISTRICT BOARD OF SCHOOL DISTRICT NO. 10, TOWNSHIP OF ROYAL OAK, OAKLAND COUNTY.

1. STATUTES—CONSTRUCTION—OATH OF OFFICE—SCHOOL TEACHERS. Desirability of statute requiring school teachers to take constitutional oath of office is a legislative matter; its construction, a judicial question (Act No. 19, Pub. Acts 1931).

2. CONTRACTS—STATUTES—PROHIBITED ACTS.
   Contract founded on an act prohibited by statute under a penalty is void although not expressly declared to be so.

3. SAME—PUBLIC POLICY.
   All contracts are void where made in violation of statute enacted to protect the public against fraud or imposition, or to safeguard the public health or morals and which contain a prohibition and impose a penalty.

4. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' CONTRACTS—CONSTRUCTION OF STATUTE.
   Teacher's contract *held*, void *ab initio* where she failed to take constitutional oath of office at time of signing same; the statute providing that "each teacher *shall* make and subscribe," such oath being construed as mandatory (Act No. 19, Pub. Acts 1931).

5. SAME—CONTRACTS VOID AB INITIO—CANCELLATION.
   School board *held*, to have right and authority to declare void and cancel a teacher's contract which was void *ab initio*.

6. SAME—RECOVERY.
   School district *held*, not liable in action by teacher on her alleged contract which was void *ab initio* and had been cancelled by school board, where she had been paid for such services as had been subsequently rendered.

Appeal from Oakland; Covert (Frank L.), J. Submitted January 8, 1935. (Docket No. 8, Calendar No. 37,863.) Decided May 17, 1935.

Assumpsit by Helen I. Sauder, individually and as assignee of Grace Lobdell and others, against District Board of School District No. 10, Township of Royal Oak, County of Oakland, on school teachers' contracts. Judgment for plaintiff. Defendant appeals. Reversed.

*Pelton & McGee,* for plaintiff.

*A. Floyd Blakeslee,* for defendant.

EDWARD M. SHARPE, J.   This is an action brought by Helen I. Sauder for herself individually and as assignee for three other school teachers to recover damages for breach of contract.   Plaintiff and her assignors were school teachers under contract and had taught for defendant district during the 1931–1932 school term.   Prior to April, 1932, all of the teachers took the statutory oath of office, the same being administered by the superintendent of schools and signed by the teachers.   The oaths were in printed form on separate slips of paper and signed in duplicate, but not dated.   One copy was left with the superintendent of schools and the other copy kept by the teacher.   In April, 1932, new contracts of employment were signed by the teachers and members of the school board for the year beginning in September, 1932.   The oath of allegiance was not attached to these contracts.

On July 11, 1932, the board of education of the defendant school district passed a resolution declaring that all contracts between the board of education and teachers of the district made prior to July 1, 1932, except two which were dealt with separately, were cancelled and made void; and restraining all teachers from coming upon the school property for any reason except for such matters as pertained to their personal property.   The following reasons were given:

"It appearing that said contracts or certain of them, are or may be, contrary to public policy, unreasonable and excessive in amount according to the qualification of the teacher or that certain teachers do not attain the high standards required by the board of education or that some of the contracts have been unreasonable as to the teachers themselves."

The plaintiff and her assignors returned to school in the fall of 1932, but before beginning their work as teachers an oral oath was administered to each of plaintiff teachers. The procedure of this ceremony was described by witness Filomena Sullivan as follows:

"*Q.* Just answer my question, what did you do when the oath was administered, I want you to tell what you did.

"*A.* I went to school the first day and had my contract of the previous year with the oath and Mrs. Moegle, our superintendent, administered the oath to us again. I mean by that that she read that oath to me. I raised my right hand the same as I did here this morning and swore to the same oath I had taken the previous year. I had this exhibit with me at that time. I read it word by word with my right hand raised at the time. That was in my possession. After I got there I put it on her desk. After that was done I was given this back. I retain it with my contract."

The plaintiff and her assignors began teaching in September, 1932, without signing new contracts, but with a modification of the contracts signed in April, 1932, reducing the salaries. In October, 1932, the teachers were offered new contracts with oath attached, which they refused to sign because of a 30-day cancellation clause which was therein provided. No further action was taken by the school board until January 20, 1933, when the following letter was written to plaintiff, Margaret Williams and Filomena Sullivan:

"Owing to the shortage of funds it is necessary for us to adjust our salaries and teaching force. In accordance with a schedule of reduction and reorganization approved by the board of education at their meeting January 14, 1933, you are hereby

notified that your services will no longer be necessary and cannot be accepted after January 20, 1933.

"Attached to this letter is payment in full for all services to date, including back pay for 1931–32.

"(Signed) Wm. R. Spriegel,
William R. Spriegel,
Superintendent of Schools
District No. 10, Royal Oak
Township."

The same letter was given to Grace Lobdell on February 4, 1933.

On April 4, 1933, plaintiff brought suit for salary. It is conceded that if plaintiff is entitled to a judgment that the amount due is $2,354.87 with interest at 5 per cent. The trial court held in favor of plaintiff and defendant appeals.

It is the contention of the defendant that the written contracts executed in April, 1932, for the school year beginning in September, 1932, are illegal and void *ab initio* because they do not contain the oath of allegiance as provided by Act No. 19, Pub. Acts 1931, and for the further reason that the written contracts were cancelled in July, 1932, by resolution of the school board, notice of which was mailed to each teacher.

Act No. 19, Pub. Acts 1931, reads as follows:

"At the time of the signing of said contract and any renewal thereof each teacher shall make and subscribe the following oath or affirmation: * * * which shall be embodied in and made a part of said contract. Such contract with oath or affirmation shall be executed in duplicate. One copy thereof shall be filed with the board of education, and the other copy shall be retained by the teacher. The several members of the board of education, school trustees, school commissioners, and superintendents

of schools are hereby authorized to administer said oath. The word 'teacher' shall be construed to include superintendents, principals and supervisors of schools.''

The purpose of the enactment of this legislation was to make certain that teachers coming in contact with youth were such as believe in the Constitution and principles of government of our State and nation. Whether or not this sort of legislation is desirable and needful is a matter for the legislative branch of our government to concern itself with. The province of the court in the instant case is to construe the act. The act provides that ''at the time of the signing of said contract and any renewal thereof each teacher shall make and subscribe the following oath or affirmation * * * which shall be embodied in and made a part of said contract.''

The act uses the word ''shall'' and the principal question is whether or not the word so used shall be given its literal meaning. In *City of Madison* v. *Daley,* 58 Fed. 751, the court held that the word ''shall'' as used in a statute, will be construed as meaning ''may'' where no public or private right is impaired by such construction; but where the public are interested, or where the public or third persons have a claim *de jure* that the act shall be done, it is imperative, and will be construed to mean ''must.''

In *Re Reidy's Estate,* 164 Mich. 167, we said, ''it is a well-settled principle of law that all contracts which are founded on an act prohibited by a statute under a penalty are void, although not expressly declared to be so.'' This doctrine was affirmed in *Cashin* v. *Pliter,* 168 Mich. 386 (Ann. Cas. 1913 C, 697), wherein the court also said, ''the general rule is well settled that, where statutes enacted to protect the public against fraud or imposition, or to

safeguard the public health or morals, contain a prohibition and impose a penalty, all contracts in violation thereof are void.''

The above statute was designed as a protection to the youth of the State; and, being so, its provisions are mandatory and the teachers not having complied with its requirements their contracts were void *ab initio*.  It must then follow that the school board in July, 1932, had the right and authority to declare all such contracts canceled and void.    The teachers having been paid for all services rendered subsequent thereto may not now recover more.

The judgment of the lower court is reversed, with costs to defendant.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.