MACIAK v. OLEJNICZAK.
No. 7305.

United States District Court
E. D. Michigan, S. D.
Sept. 29, 1948.

Charfoos, Gussin & Weinstein, of Detroit, Mich., for plaintiff.

Harry Lee Endsley, of Detroit, Mich., for defendant.

LEDERLE, District Judge.

### Findings of Fact.

1. This action was instituted by a citizen of Poland, residing in this District, against a citizen and resident of this District, claiming in excess of $3,000.00 for loss and damage resulting from defendant's failure to complete performance of his contract to remodel plaintiff's home and store.

2. About October 1, 1947, defendant, who did business in Hamtramck, Michigan, advertised in this vicinity by radio and newspaper, representing to the general public that he was duly authorized building contractor, able to and specializing in basement digging, constructing basements, and performing other building construction, alteration and modernization.

3. As a result of said advertising, plaintiff telephoned defendant, requesting him to make an estimate for extensive building alterations to be made upon her combined home and candy store at 1741 Caniff Avenue, in the City of Hamtramck, County of Wayne, Michigan.

4. Thereupon, defendant came to plaintiff's said premises, and informed her that he was a competent, licensed builder and alteration contractor, ready, willing and able to perform the desired building and construction work as a building contractor. Plaintiff relied upon these statements and the said advertisements, and, as a result of such reliance entered into a written contract with defendant, whereby, for a price of $6695.00, defendant contracted to erect, install, build, apply, construct and/or furnish the following at said premises:

"Build basement, 24 x 34 of 16 x 16 x 8 cement block; bring down water tank; install toilet and bath; install hot water boiler plant for heat; brick front of store half way; change appearance to modern; brick

side with ⅝″ siding complete; take down chimney in living room; repair chimney in kitchen; change two window sash and front door to store; repair floor in upper rear porch; concrete lower floor of porch; install grade door on side to basement; install stairs to basement on rear porch; install rain pipes."

5. The said contract was entered into on October 1, 1947, at which time plaintiff paid defendant $75.00 on account thereof. On October 7, 1947, plaintiff paid defendant the additional sum of $3,000.00, leaving an unpaid balance of $3,620.00, which defendant computed as $3,720.00, payable $1,860.00 upon completion and the remainder of $1860.00 payable with interest.

6. Defendant commenced performance of said contract on October 1, 1947, at which time he raised plaintiff's structure on building jacks, which he had rented. Defendant's employees worked at plaintiff's premises for approximately 3½ weeks, at which time, before the work was completed and while plaintiff's structure still stood on building jacks, they and defendant abandoned the project because of defendant's financial difficulties and lack of builder's and alteration contractor's license required by M.S.A. 18.85(1) et seq., Comp.Laws Mich.Supp.1940, § 8690-21 et seq., which prohibited engaging in the building business, such as defendant did, or the performance of any contract such as here involved by a non-licensed builder or alteration contractor.

7. At the time of negotiating and contracting with plaintiff, defendant knew that he was required to have a builder's license in accordance with state law to carry on the type of business in which he was engaged and to perform his contract with plaintiff, he knew that he was not such a licensed builder, nor did he intend to procure such license, and he had no reasonable grounds for believing otherwise.

8. At the time of negotiating and contracting with plaintiff, defendant knew that he was insolvent and financially unable to perform his contract with plaintiff, and he had no reasonable grounds for believing otherwise. He did not have his own building supplies, and his suppliers were refusing to extend credit to him and would sell to him only for cash, and reluctantly. He diverted, and knew at the time of negotiating and contracting with plaintiff that he would divert, moneys paid to him by plaintiff to pay existing and pressing creditors, impairing his financial ability to perform his contract with plaintiff. Defendant owed back pay to his construction employees, who were threatening to, and did subsequently, abandon work in the process of performance because of defendant's inability to pay their back wages. Defendant rented house-raising equipment from Ferenc and Son, knowing that he was unable to pay the rental therefor. He raised plaintiff's structure thereon and was unable to pay the rental, as a result of which a replevin suit for the jacks was instituted against plaintiff in the Hamtramck Justice Court. In order to avoid replevin of the building jacks from under her then incompleted, and raised, building, plaintiff had to pay rental for said jacks to the owner thereof.

9. As a result of defendant's inability to complete said contract, plaintiff was forced to pay, and did pay, third parties for redigging the basement and has contracted to pay others to have the basement built, and to place her building thereon, which work defendant had contracted to perform as aforesaid. As a further result of defendant's conduct, particularly the length of time the structure was left on raised jacks, the framework settled, during which settling process, walls, plaster and windows were broken and damaged.

10. Defendant's representations that he was a licensed builder and ready, willing and able to perform his contract with plaintiff were false in the following respects, viz.; defendant was not a licensed builder and he was insolvent and financially unable to perform the contract. Such representations related to material facts, namely, his ability, legal and financial, to perform the contract. Such representations were not actually believed by the defendant nor did he have any reasonable grounds for believing them to be true. Such representations were made with the intent that plaintiff should act thereon by entering into said contract with defendant and paying

him money. Such representations were believed, relied upon and acted upon by plaintiff to her damage. In acting upon such representations plaintiff was ignorant of their falsity and reasonably believed them to be true.

11. Counsel conceded that plaintiff's loss and damage resulting from defendant's inability and failure to complete his contract amounts to $4500.00. Plaintiff claims defendant's conduct amounts to legal fraud, and defendant claims that his conduct amounts merely to breach of a promise to perform a contract, without fraudulent implications. Because of the defendant's insolvency and the imminence of bankruptcy, both parties desire a determination as between these two theories raised under the pleadings and proofs herein.

## Conclusions of Law.

■ 1. This court has jurisdiction of this civil action as one between an alien and a citizen of this District where the matter in controversy exceeds $3,000.00, exclusive of interest and costs. 28 U.S.C.A. § 41(1) (c), carried into the 1948 revision of the Judicial Code as 28 U.S.C.A. § 1332(a, b).

■ 2. The statute of Michigan, in order to safeguard and protect home owners, make it unlawful under penalty of criminal sanctions, in counties of over 250,000 inhabitants, which includes Wayne County, for any person, firm, partnership, association or corporation, in any capacity to undertake, offer to undertake, purport to have the capacity to undertake, submit a bid, or make a contract, to erect, construct, replace, repair, alter, add to, subtract from, or improve, any residential or combination of residential and commercial structure, or to engage in the residential building and alteration contracting business without first obtaining a residential builder's license or a residential maintenance and alteration contractor's license as provided in said statutes, which require among other things an application to, and certification by, the Michigan Corporation and Securities Commission, after an investigation as to ability, mechanical, financial and otherwise, to competently and properly engage in such business. Consequently, the contract in question was void, and defendant was legally unable to perform it. M.S.A. 18.85(1) et seq.; In re Reidy's Estate, 1910, 164 Mich. 167, 129 N.W. 196.

■ 3. Plaintiff, being a home owner and having innocently entered into a prohibited contract to have extensive building and alteration done to her combined home and store by an unlicensed builder and alteration contractor, is entitled to complain of the illegality thereof because she is within the class of persons the licensing statute was designed to protect against unlicensed persons. M.S.A. 18.85(1) et seq.; 12 Am.Jr. Secs. 217, et seq.

■ 4. Where, as here, defendant, an unlicensed and insolvent builder and alteration contractor, enters into a residential building and alteration contract, representing that he is a licensed builder and ready, willing and able to perform the contract, knowing that he is legally and financially unable to perform it because he is not, and does not intend to become, licensed as required by state law, and because he is insolvent and financially unable to perform the contract and intends to divert the proceeds thereof to pay existing and pressing creditors rather than to finance performance of such contract, and having no reasonable grounds for believing otherwise, he has made representations as to material facts, namely, his readiness, willingness and ability to perform the contract, and, where such representations were not actually believed by him to be true and were made with the intent that plaintiff homeowner should act thereon by entering into such contract with defendant and paying him money, which representations were believed, relied upon and acted upon by plaintiff to her damage without plaintiff having knowledge of their falsity and while she reasonably believed them to be true, defendant has been guilty of fraud and plaintiff is entitled to recover her loss and damage resulting therefrom because of his legal and financial inability to complete performance of his contract. Southern Development Co. of Nevada v. Silva, 1888, 125 U.S. 247, 8 S.Ct. 881, 31 L.Ed. 678, at page 680; Pocatello Security Trust Co. v. Henry, 1922, 35 Idaho 321, 206 P. 175, 27

A.L.R. 337; Weidman v. Phillips, 1909, 159 Mich. 380, 124 N.W. 40.

5. Accordingly, judgment is being entered simultaneously herewith in favor of plaintiff and against defendant for the sum of $4,500.00, the amount of loss and damage resulting from defendant's fraud, with costs taxable in plaintiff's favor.

### Judgment.

In accordance with the foregoing findings of fact and conclusions of law,

It is Hereby Ordered and Adjudged that the plaintiff recover from the defendant the sum of $4,500.00, being plaintiff's loss and damage resulting from the fraudulent acts of defendant as complained of, together with costs taxable in plaintiff's favor, for which execution may issue.