No. 116,415

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVIS T. MOULDEN,
*Appellant/Cross-appellee*,

v.

DUSTIN HUNDLEY,
*Appellee/Cross-appellant,*
and
KANSAS DEPARTMENT OF REVENUE, ET AL.,
*Defendants*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 59-2239, a party making a claim against a decedent's estate generally must file a petition within six months of the person's death for the court to validate the decedent's will or for the estate to be administered, otherwise the claim will be barred.

2.

K.S.A. 59-2239 applies to a claim made against a motor vehicle titled in the decedent's name.

3.

In this case, because the claimant failed to file a petition against the decedent's estate within six months of the decedent's death, claimant is barred from making his claim against the motor vehicles titled solely in the decedent's name.

4.

Kansas has a two-year time limit on claims for the taking, detaining, or damaging of personal property. See K.S.A. 60-513(a). The two-year time limit begins to run when the claim accrues, either (1) when the act giving rise to the claim first causes substantial injury or (2) if the injury isn't reasonably ascertainable until some later time, when a person could reasonably ascertain the injury.

5.

A bailment arises when one party (the bailor) leaves personal property with another party (the bailee) on deposit or for some particular purpose under a contractual agreement, either express or implied, that the property will one day be returned to the bailor.

6.

A constructive bailment is created when a person comes into lawful possession of personal property of another and when considerations of fairness support imposition of the bailment.

7.

After a bailee's death, when the bailee's heir keeps bailed property that was in the bailee's possession, a constructive bailment is imposed by law unless the bailee acts in a manner inconsistent with a bailment.

8.

In the case of a bailment for an indefinite period, the cause of action does not accrue until the bailor makes a demand for the property.

9.

In this case, because the bailee's heir kept the bailed property after the bailee's death, a constructive trust was imposed by law. Accordingly, the cause of action did not accrue until the bailor made a demand on the heir for return of the property. The suit, which was filed within two years of that demand, was timely.

Appeal from Leavenworth District Court; DAVID J. KING, judge. Opinion filed October 27, 2017. Affirmed.

*Jeffery A. Sutton*, of Sutton Law Office, L.L.C., of Basehor, for appellant/cross-appellee.

*John W. Fresh*, of Farris & Fresh Law Office, of Atchison, for appellee/cross-appellant.

Before GREEN, P.J., BUSER and LEBEN, JJ.

LEBEN, J.: After Hope Hundley's death, her husband, Dustin Hundley, and her father, Davis Moulden, got into disputes over who owned two cars and some household furniture that Davis had transferred to Hope during her lifetime. The district court concluded that the cars belonged to Dustin, as Hope's heir, because Hope had obtained title to the cars—and because Davis didn't make a claim for the cars against her estate within six months as required by a statute, K.S.A. 59-2239. The court concluded that the furniture belonged to Davis and that he had merely loaned the furniture to Hope. Both Davis and Dustin appealed.

On appeal, Davis argues that he should keep the cars because they were stored in his garage. But he had fully transferred title to Hope long before her death, and he didn't make a claim for the cars against her estate during the time provided under Kansas law. So the district court correctly ruled that Dustin, as Hope's heir, owned the cars.

3

Dustin argues on appeal that Davis waited too long to recover the furniture. A person must sue to recover property left by agreement with another within two years. Dustin emphasizes that Davis sued more than two years after Hope's death. But our analysis of the time limit is different for the furniture than for the cars because, unlike a car, there's no title to show furniture ownership and Davis claimed he had merely loaned the furniture to Hope. The statute of limitation in these circumstances doesn't begin to run until the owner of the property asks for it back. See *Schoenholz v. Hinzman*, 295 Kan. 786, 791-92, 289 P.3d 1155 (2012). Davis brought suit less than two years after he asked for the property back, so his claim wasn't barred by the statute of limitations.

With that overview, let's briefly survey the facts that led to this appeal.

The cars at issue are classics—a 1963 Ford Thunderbird and a 1954 Ford Crestline Crown Victoria. Davis transferred title of both cars to Hope in 2005.

Davis said that Hope stored the cars in his garage when she wasn't using them, and they were in his garage when Hope died in January 2012. They remained in his garage after her death too, even when Dustin transferred the car titles to his name in 2013.

Two years later, in the summer of 2015, Dustin told Davis he was coming to get the cars. Davis then filed a lawsuit asking that the court determine him the rightful owner. Davis contended that he had transferred title to Hope only so that she could obtain insurance on them and that he had never intended to fully give the cars away.

When Davis filed suit, he also sought return of the furniture and household items that he had loaned to Hope. Dustin filed a counterclaim asking that he be named the rightful owner of the cars and contended that Davis had waited too long to make any of his claims.

After hearing evidence at trial, the district court concluded that Hope had been the presumptive owner of the cars because Davis had transferred title to her. The court found that Davis should have filed a petition within six months of Hope's death to have Hope's estate administered and to contest Hope's ownership of the cars, a deadline set out in a Kansas statute, K.S.A. 59-2239. Since Davis didn't file a claim to the cars within six months of Hope's death, he could not pursue his claim. The court found that Dustin was the legal owner of the cars.

The court also found that, although Dustin had long had possession of the furniture and household items, Davis had merely loaned them to Hope and was entitled to their return. The court said that the two-year statute of limitations hadn't run because the continued possession of the items was a continuing wrong, which continually restarted the two-year limitation period. So the court awarded the furniture and household items to Davis.

We should note that the district court had an alternative finding about the statute of limitations—that because there's no title registration system for furniture and household items, there wouldn't be a need to make a claim under K.S.A. 59-2239. We won't be addressing that argument in our decision because (1) Dustin didn't raise a claim that K.S.A. 59-2239 barred Davis' claim to these items and (2) neither party argues this basis on appeal. We do note, though, that in some circumstances the six-month claim period of K.S.A. 59-2239 does apply even to property for which there is no title or registration system. E.g., *In re Del Paronto's Estate*, 172 Kan. 7, 9-10, 238 P.2d 464 (1951) (applying time limit of K.S.A. 59-2239 to ring worn by decedent when she died). Whether K.S.A. 59-2239 might have applied to claims to the furniture and other household items isn't an issue in this appeal, and we make no determination about that question.

The appeal comes to us following a trial in the district court. We review its factual findings to see whether they are supported by substantial evidence. If so, we must accept

5

them. We then look to see whether the supported factual findings are sufficient to support the district court's legal conclusions. At that stage, in reviewing the legal conclusions, we consider them independently, with no required deference to the district court. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007); *Taylor v. Kansas Dept. of Health and Environment*, 49 Kan. App. 2d 233, 237-38, 305 P.3d 729 (2013).

I. *The District Court Did Not Err in Finding that Dustin Owned the Cars.*

Resolution of ownership of the cars rests upon the application of K.S.A. 59-2239(1)(b): "No creditor shall have any claim against . . . the property of a decedent other than liens existing at the date of the decedent's death, unless a petition is filed for the probate of the decedent's will . . . or for the administration of the decedent's estate . . . within six months after the death of the decedent . . . ." Essentially, K.S.A. 59-2239 is a special statute of limitations for claims against a deceased person's estate and "it operates as a complete bar to all demands against a decedent's estate that are not timely filed." *Nelson v. Nelson*, 288 Kan. 570, 591, 205 P.3d 715 (2009). Unless some exception in the statute applies, a party seeking to claim property from the deceased person's estate must comply with the statute. *In re Estate of Reynolds*, 266 Kan. 449, 455, 970 P.2d 537 (1998).

Davis concedes that he didn't file a petition seeking to have Hope's estate administered within six months of her death. So if K.S.A. 59-2239 applies, his claim to the cars is barred.

Davis argues that it doesn't apply because he had physical possession of the cars. In support, he cites our Supreme Court's 1974 decision in *Oswald v. Weigel*, 215 Kan. 928, 529 P.2d 117 (1974). In *Oswald*, the defendant claimed she was the rightful owner of cattle and other property that her parents had transferred to her before their deaths.

6

Another party challenged her claim, arguing that the property belonged to her parents' estate and that K.S.A. 59-2239 barred her from making a claim. As Davis notes, the court ruled in favor of the daughter—the party in possession of the cattle—even though she had not made the timely filings under K.S.A. 59-2239.

But there is a critical factual difference between *Oswalt* and this case. In *Oswalt*, the parents had not only transferred possession of the cattle, but had also given her a signed bill of sale. By giving their daughter both possession *and* a signed bill of sale, the parents had accomplished "a present conveyance of legal title to the property." Our Supreme Court's holding that the daughter didn't have to comply with K.S.A. 59-2239 rested not upon mere possession, but on the combination of possession and a signed bill of sale, which in combination conveyed legal title:

> "Under these circumstances, where a claimant is in possession of tangible personal property pursuant to a bill of sale executed by a decedent, there is no effort to take anything out of an estate; hence there is no necessity for making claim for the property in the probate court administering the decedent's estate." 215 Kan. at 933.

Here, by contrast, Davis had given Hope legal title to the cars. Davis possessed the cars at the time of her death but possessed neither a bill of sale nor car titles. By all outward indications, he had fully transferred ownership to Hope. Mere possession of the cars at Hope's death doesn't allow Davis to avoid the requirements of K.S.A. 59-2239.

Had Davis made a timely claim, he could have attempted to rebut the presumption of ownership given by the vehicle title. See generally K.S.A. 8-126(cc); *State ex rel. Love v. One 1967 Chevrolet*, 247 Kan. 469, 475, 799 P.2d 1043 (1990). But since Davis did not comply with K.S.A. 59-2239, his claim was barred.

II. *The District Court Did Not Err in Finding that Davis Still Owned the Furniture and Household Property.*

Resolution of the next issue (ownership of the furniture and household items) comes down to a different sort of time limit. All states have statutes of limitations, which provide that lawsuits must be brought within a limited time after a claim arises. These statutes of limitations ensure that court proceedings take place while evidence is still available and relatively fresh, and they also provide finality and predictability in legal affairs. See *Campbell v. Hubbard*, 41 Kan. App. 2d 1, 2, 201 P.3d 702 (2008).

Kansas has a two-year time limit on claims for the taking, detaining, or damaging of personal property. See K.S.A. 60-513(a). The two-year time limit begins to run when the claim accrues, either (1) when the act giving rise to the claim first causes substantial injury or (2) if the injury isn't reasonably ascertainable until some later time, when a person could reasonably ascertain the injury. See K.S.A. 60-513(b); *LCL, LLC v. Falen*, 53 Kan. App. 2d 651, 658-64, 390 P.3d 571 (2017), *rev. granted* September 29, 2017. Dustin argues that Davis could tell he had been injured (here, through loss of the property) when Hope died with the property in Dustin's possession. Dustin argues that Davis' claim is barred because he didn't sue within two years of Hope's death.

The question we must determine is when Davis' claim accrued. If it accrued at the time of Hope's death, then his claim is barred.

Davis contends that his claim didn't start to run until he asked for the property back and Dustin refused to return it. In support, Davis cites our Supreme Court's 2012 decision in *Schoenholz*. Before we discuss *Schoenholz*, though, we need to introduce the legal concept called bailment.

A bailment arises when one party (the bailor) leaves personal property with another party (the bailee) on deposit or for some particular purpose under a contract, either express or implied, that the property will one day be returned to the bailor. See *M. Bruenger & Co., Inc. v. Dodge City Truck Stop, Inc.*, 234 Kan. 682, 685, 675 P.2d 864 (1984); *Schoonover v. Igleheart Brothers*, 163 Kan. 689, 693, 186 P.2d 109 (1947); 8 C.J.S., Bailments § 1. In our case, when Davis loaned the furniture to Hope, he lent it for a particular purpose—for her use—under the agreement that one day it would be returned to him. So Davis, the bailor, and Hope, the bailee, created a typical bailment.

*Schoenholz* discussed several rules about bailments, including when a legal claim for return of bailed property accrues, thus starting the clock on the two-year statute of limitations. In *Schoenholz*, a brother, Rodney Schoenholz, left some horses on the farm of his sister, Janine Hinzman, initially as part of a joint plan to breed horses. But after the parties agreed to stop that joint effort, Schoenholz left the horses—even though he had agreed to remove them—and Hinzman had to care for them. Three years later, Hinzman sold the farm and the horses. Schoenholz sued for damages because Hinzman didn't return the horses to him.

Since the parties were no longer trying to breed horses and Schoenholz had simply left the horses on Hinzman's farm, forcing her to care for them, the bailment worked only to Schoenholz' benefit. Such a bailment is called a gratuitous bailment, and the court said it was an "open-ended" one that "would last until Schoenholz claimed his property" or until Hinzman chose to sell the horses under a statute that covered the bailment of horses or livestock. 295 Kan. at 792. Then the court made the point most applicable in our case—that a bailment for an indefinite period normally doesn't end until the bailor asks for the property back:

> "In the case of a bailment for an indefinite period, the cause of action does not accrue until the bailor makes a demand for the property. [Citation omitted.] The statute of

limitations did not begin to run until Schoenholz approached Hinzman and told her he wanted his property back. Until that time, she was a gratuitous bailee of all of Schoenholz' property." 295 Kan. at 792.

Under that rule, the statute of limitations wouldn't have begun to run until Davis asked for his furniture and household items back. He didn't ask for the property back until close to the time Davis filed suit (certainly within two years of the time he filed suit).

That would seem to answer the question before us about when Davis' claim accrued—but there's another significant wrinkle we must discuss, even though the parties have not. As we've already noted, this was a bailment for the exclusive benefit of Hope, the bailee. And there's a general rule that "[a] bailment for the sole benefit of the bailee terminates immediately upon the death of the bailee." 8 C.J.S., Bailments § 118. See also *Salter v. Sutherland*, 123 Mich. 225, 230, 81 N.W. 1070 (1900) (stating that the death of the bailee in a gratuitous bailment terminated the bailment). Accordingly, one might argue that Davis' claim accrued when the bailment terminated—on Hope's death. If so, the statute of limitations would bar his claim.

The effect of the bailee's death on accrual of a claim for the return of bailed property was not an issue addressed in *Schoenholz* since neither party to the bailment had died. No Kansas appellate decision addresses such a situation. We have therefore looked for caselaw elsewhere to guide us.

We have found a line of cases suggesting that when Hope died and the property remained in Dustin's possession, a new constructive bailment with Dustin as the bailee began. Sometimes, when a party takes possession of property lawfully but doesn't have ownership of it, a constructive bailment is created. As an example, when police impound a car, there is a constructive bailment and the police ultimately must return the car to its

10

rightful owner. See Black's Law Dictionary 169 (10th ed. 2014). A New York court found a constructive bailment in a case similar to ours.

In that case, *Martin v. Briggs*, 235 A.D.2d 192, 663 N.Y.S.2d 184 (1997), artist Agnes Martin left some of her paintings in the care of a married couple, Kim and Lois Blood. The Bloods' children took the paintings when their parents died. When Martin sued for return of the paintings, the children argued that the statute of limitations had long expired, the last of their parents having died 23 years before suit was filed. But the court held that the original bailment was one of "indefinite duration," no party had given notice of termination, and the children had not acted in a manner inconsistent with a continuation of the bailment. 235 A.D.2d at 197-98. The court cited the same rule provided in the Kansas case, *Schoenholz*: That the statute of limitations "does not begin to run against a bailee in lawful possession until the bailor makes a demand for the chattel's return and the demand is refused." 235 A.D.2d at 198. Martin had sued within months of the children's refusal of her demand to return the paintings, so the court held her suit was not barred by the statute of limitations. 235 A.D.2d at 198.

The *Martin* case is very similar to our case. In both, when the bailee died, the bailee's heir retained the property but did nothing to indicate that the heir was claiming ownership, not merely keeping the property for eventual return to the bailor. When, after a bailee's death, bailed property that was in the bailee's possession is kept by the bailee's heir, a constructive bailment is imposed by law unless the bailee acts in a manner inconsistent with a bailment. See *Martin*, 235 A.D.2d at 198 (noting that bailee's conduct ordinarily must be "wholly inconsistent with the contract of bailment" to end the relationship); *In re Silver Sands R.V. Resort*, 636 Fed. Appx. 950, 952 (9th Cir. 2016) (unpublished opinion) (stating that a constructive bailment may be imposed "when a person comes into lawful possession of personal property of another and when justice so requires"); 8 C.J.S., Bailments § 14. Dustin came into possession of these personal-property items lawfully; he shared the use of them before Hope's death. Dustin never

11

contested Davis' actual ownership of the items, and he didn't act in a manner inconsistent with Davis' ownership until shortly before Davis filed suit. In these circumstances, Dustin held the property as the bailee in a constructive bailment.

We are aware of one somewhat dated precedent from Tennessee that's contrary to our holding, the 1896 Tennessee Supreme Court decision in *Morris v. Lowe*, 97 Tenn. 243, 36 S.W. 1098 (1896). In that case, some personal property was given to a man before his marriage. As in our case, the property was loaned, not given. The man later married and then died, still in possession of the property. His widow kept it and asserted a statute of limitations defense when the original owners sued for the property's return. But the court held that the gratuitous bailment in favor of her husband had terminated on his death "and no trust followed it into the hands of the widow." 97 Tenn. at 245.

We find the *Morris* case unpersuasive. It came about in an era in which a married woman's right to hold property was itself quite limited; the State of Tennessee didn't adopt a Married Woman's Property Act, giving married women the right to hold property in their own names, until 1913. See *McCrary v. Harrell*, 166 Tenn. 431, 439, 62 S.W.2d 566 (1933). More importantly, when an heir or cotenant or other party has taken possession of property in a lawful manner, imposition of a constructive bailment is a reasonable step to protect the bailor, who may not even know that the transfer of possession has taken place. And even if the bailor is aware of the transfer, we see no reason that the time clock of a statute of limitations to file suit should begin to run if the substituted bailee has not acted in any way that's inconsistent with the bailor's ownership.

We conclude that Dustin was the bailee of a constructive bailment that began on Hope's death. Davis' claim did not accrue, starting the statute-of-limitations clock, until Dustin refused Davis' request for return of the property. Accordingly, Davis' suit wasn't barred.

Dustin raises two other points regarding the return of these property items, but neither is persuasive. First, he contends that Davis failed to prove his case because he didn't introduce the list of the items into evidence at trial. But as the district court noted, the items were listed in an attachment to the petition, Davis testified that he owned the items in that list, and Dustin never contested ownership of them. In these circumstances, we agree with the district court that Davis presented sufficient proof of his ownership claim.

Second, he argues from the evidence that Davis knew for more than two years before filing suit that Dustin wouldn't return the property. But that's not a fair reading of the evidentiary record given the district court's factual findings. The only testimony on this point came from Davis. At one point, he said there was "[n]ever . . . a time that [Dustin] informed [him] that he didn't intend to return those items of personal property." Later, he said there was a point at which Davis tried to arrange to have a moving company come to get the property but that Dustin "just didn't allow it to happen." But there was no testimony this came long before the suit was filed, and the district court concluded the only thing that occurred "shortly after the death of Hope" was that Davis' wife retrieved "a couple of items of personal property."

The district court didn't make a specific, detailed finding stating when Davis first demanded return of the personal property, but Dustin didn't ask the district court to make any additional or more detailed factual findings on this point. In these circumstances, we presume that the district court made the necessary factual findings to support its decision. *Dragon v. Vanguard Industries, Inc.*, 282 Kan. 349, 356, 144 P.3d 1279 (2006). The evidence is consistent with the conclusion that except for "a couple of items," not at issue in this lawsuit, Davis didn't demand return of the personal property until shortly before filing suit.

We affirm the district court's judgment.

13