| **Sympathy for the Devil, LLC v 1170 Broadway Tenant LLC** |
|:---:|
| 2024 NY Slip Op 34378(U) |
| December 15, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 650213/2021 |
| Judge: Andrea Masley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 48

-------------------------------------------------------------------------X

SYMPATHY FOR THE DEVIL, LLC,

|  |  |
|---|---|
| | **INDEX NO.**    650213/2021 |

                        Plaintiff,

**MOTION DATE**           

                       - v -

1170 BROADWAY TENANT LLC,

**MOTION SEQ. NO.**    002 003

                        Defendant.

**DECISION + ORDER ON
MOTION**

-------------------------------------------------------------------------X

**HON. ANDREA MASLEY:**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 117, 171, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 217, 218, 219, 220, 221, 222, 223, 226

were read on this motion to/for        PARTIAL SUMMARY JUDGMENT           .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 114, 115, 116, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 172, 173, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 224

were read on this motion to/for        SUMMARY JUDGMENT(AFTER JOINDER       .

Upon the foregoing documents, it is

This is a contract dispute between defendant 1170 Broadway Tenant LLC (Broadway

Tenant), the former owner of the NoMad Hotel, located at 1170 Broadway, New York,

NY and plaintiff Sympathy for the Devil, LLC (SFTD), the manager of the NoMad Hotel

food and beverage facilities.[1] (NYSCEF Doc. No. [NYSCEF] 77, Joint Statement of

Undisputed Fact [JSUF] ¶¶ 1, 3.)

---

[1] SFTD and former plaintiff Hot Lips, LLC settled their case against 649 South Olive, owner of the Los Angeles NoMad Hotel. (NYSCEF 172, MOL in Opp at 4; NYSCEF 77, JSUF ¶ 2; see also NYSCEF 225, Stipulation of Partial Discontinuance.) Hot Lips and

In motion sequence number 002, SFTD moves for partial summary judgment on its second cause of action against Broadway Tenant for breach of the New York Restaurant Management Agreement (NY RMA), alleging that Broadway Tenant failed (1) "to pay SFTD the fees and reimbursable expenses owed" and (2) "to reimburse or indemnify SFTD the $3 million it paid to settle the class action lawsuit." (NYSCEF 78, Notice of Motion [mot. seq. no. 002].) In motion sequence number 003, Broadway Tenant moves, pursuant to CPLR 3212, to dismiss the complaint. (NYSCEF 114, Notice of Motion [mot. seq. no. 003].)

**Background**

Daniel Humm and Will Guidara established SFTD to manage and operate a restaurant in the NoMad Hotel. (NYSCEF 173, Plaintiff's Response to Defendant's 19-A Statement [SFTD Response] ¶3 [undisputed].) On June 10, 2013, SFTD and Broadway Tenant entered into the NY RMA.[2] (NYSCEF 104, NY RMA.)

Relevant provisions of the NY RMA

The NY RMA entitles SFTD to certain fees, including a Food and Beverage Fee defined as an "Operating Expense in the sum of four percent (4%) of Net Revenue paid

---

649 South Olive entered into a Restaurant Management Agreement whereby they agreed that Hot Lips would manage the Los Angeles NoMad Hotel food and beverage facilities. SFTD and Hot Lips also alleged a claim for unjust enrichment against Broadway Tenant and 649 South Olive; that claim was dismissed. (NYSCEF 45, Decision and Order [mot. seq. no. 001].) In addition, SFTD and Hot Lips have elected not to pursue their first cause of action for breach of settlement agreement against both 649 South Olive and Broadway Tenant. (NYSCEF 172, MOL in Opp at 1.) Thus, all that remains is SFTD's claim against Broadway Tenant for breach of the NY RMA.
[2] The parties entered into the NY RMA, which amended the February 1, 2011 Restaurant Management Agreement to address the development and operation of additional space. (NYSCEF 104, NY RMA at 6 ["Whereas, the parties desire to amend and restate the Original Agreement to address the development and operation of the Addition and to modify the operation of the Library... "].)

to [SFTD] monthly in arrears," a "Hotel Room Revenue Fee," defined as 1% of the Hotel Room Revenue[3] paid monthly in arrears in accordance with Section 1.5 of the NY RMA, and an "Incentive Fee," defined as 50% of Net Revenues minus Operating Expenses (NOI) "after deducting Working Capital Distributions, paid to [SFTD] quarterly in arrears as provided in Section 1.6(c). (*Id.* at 11.) The NY RMA defines Operating Expenses as expenses actually incurred by SFTD or Broadway Tenant as to specifically enumerated items, including "manager's accounting, legal and other professional fees to the extent reasonably required in connection with the operation of the Food and Beverage Facilities (including the costs of defense, settlement and judgments with respect to legal actions)." (*Id.* at 13-14 [full enumerated list of items].)

Sections 1.1(b)[4] and 2.6(a)[5] of the NY RMA require Humm and Guidara to be present regularly at the NoMad Hotel's "Food and Beverage Facilities" and actively involved in operations.[6] (*Id.* at 19, 26-27 [§§1.1(b) and 2.6(a)].)

---

[3] Hotel Room Revenue is defined as gross revenues collected by the NoMad Hotel for guests' use of hotel rooms, including retail and mini bar purchases, and in room movie and game rentals, but not Room Service. (NYSCEF 104, NY RMA at 10.)

[4] Section 1.1(b) provides that "Manager shall cause Guidara and Humm to be at the Food and Beverage Facilities on a regular and consistent basis, and to actively and personally oversee the operation and development (jointly with Owner) of the Food and Beverage Facilities; (subject to the provisions of Section 2.6 hereof, it being understood, however, that the services of Guidara and Humm are not provided on an exclusive basis and each remains free to engage in other activities to the extent not expressly prohibited from doing so under the terms of this Agreement)." (NYSCEF 104, NY RMA at 19.)

[5] Section 2.6(a) provides that "[c]ausing Guidara and Humm to actively and personally oversee the operation and development of the Food and Beverage Facilities and Manager Provided Services. Manager's services will include the active and personal selection by Manager or its designees, where applicable, of the related menus, and the staffing and levels of service of the Food and Beverage Facilities, as applicable." (NYSCEF 104, NY RMA at 27.)

[6] The NY RMA defines Food and Beverage Facilities collectively as the Primary and Secondary Outlets. (NYSCEF 104, NY RMA at 9.) Primary Outlets are identified as the Addition, Bar, Library, Herbier, Atrium, Orient Room, Cellar Areas, and Ground Floor Kitchen, and when operated as a restaurant, the Penthouse Level. (*Id.* at 16.) Secondary Outlets are identified as the Lobby area dedicated to food and beverage,

Class Action Lawsuit

In March 2019, a NoMad Hotel food and beverage employee informed SFTD that she was filing a class action lawsuit. (NYSCEF 77, JSUF ¶13.) The class action involved claims arising from a catering and events administrative fee that SFTD implemented in their catering contracts and training materials. (*See* NYSCEF 132, Class Action Complaint.) Specifically, the class action plaintiffs "alleged that [SFTD] charged special events customers an automatic 'administrative fee' that was not paid to employees as a gratuity, and that [SFTD] failed to adequately disclose this fact in special event receipts, order forms, and contracts presented to those customers." (NYSCEF 173, SFTD Response ¶ 35 [undisputed].) SFTD sent a copy of class action complaint to Josh Babbitt, counsel for The Sydell Group (Sydell).[7] (*Id.* ¶52 [undisputed].) Ultimately, SFTD paid a $3 million settlement to settle the class action. (NYSCEF 77, JSUF ¶15.)

Termination

On July 29, 2019, Humm and Guidara announced the end of their professional partnership; after this, Guidara was no longer present at or involved in the operations of the NoMad food and beverage facilities. (NYSCEF 173, SFTD Response ¶¶ 80-81 [undisputed].) On October 18, 2019, Broadway Tenant sent SFTD a default notice claiming that SFTD was in default of Sections 1.1(b), 1.1(d), 2.6(a), and 27.1(c) of the NY RMA, citing Guidara's lack of involvement in the operation of the NoMad Hotel's

---

Meeting Room, Room Service, and the Penthouse Level when not operated as restaurant. (*Id.* at 17.)

[7] Sydell was hotel manager of the NoMad Hotel. (NYSCEF 173, SFTD Response ¶ 5 [undisputed].) Babbit executed the NY RMA on behalf of Broadway Tenant. (NYSCEF 104, NY RMA.)

**650213/2021  SYMPATHY FOR THE DEVIL, LLC vs. 1170 BROADWAY TENANT LLC**
**Motion No.  002 003**

Page 4 of 13

[* 4]

food and beverage facilities. (NYSCEF 173, SFTD Response ¶ 87 [undisputed]; NYSCEF 142, Default Letter at 5-6.) On December 4, 2019, Broadway Tenant sent SFTD a notice of termination pursuant to Sections 16.2 and 27.1 of the NY RMA, effective as of December 20, 2019. (*Id.* ¶ 88 [undisputed]; NYSCEF 150, Notice of Termination.)

On January 11, 2021, SFTD commenced this action. As stated above, all that remains is SFTD's claim against Broadway Tenant for breach of the NY RMA. (*See supra* n 1.)

**Discussion**

Legal Standard

Summary judgment is a drastic remedy that will be granted only where the movant demonstrates that no genuine triable issue of fact exists. (*See Zuckerman v City of New York*, 49 NY2d 557, 562 [1980].) On a motion for summary judgment, "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact." (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [citation omitted].) In deciding a summary judgment motion, the "evidence must be analyzed in the light most favorable to the party opposing the motion." (Martin v Briggs, 235 AD2d 192, 196 [1st Dept 1997] [citation omitted].) The motion should be denied if there is any doubt about the existence of a material issue of fact. (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012].) However, bare allegations or conclusory assertions are insufficient to create genuine issues of fact to defeat the motion. (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980].) "A

motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility." (*Ruiz v Griffin*, 71 AD3d 1112, 1115 [2d Dept 2010] [internal quotation marks and citations omitted].)

<u>Breach of NY RMA for Management Fees and Operating Expenses</u>

SFTD alleges that Broadway Tenant breached the NY RMA by failing to pay SFTD management fees and operating expenses from July 2019 to January 2020 despite SFTD's continuing performance after Guidara's departure.

*Management Fees*

The NY RMA clearly entitles SFTD to management fees, including a Food and Beverage Fee, a Hotel Room Revenue Fee, and an Incentive Fee. (NYSCEF 104, NY RMA at 20-21 [§1.6]; *Id.* at 11.) Broadway Tenant does not dispute that the NY RMA provides for payment of these fees; rather, it asserts that SFTD cannot recover these fees for the requested period because SFTD was in violation of Sections 1.1(b), 1.1(d), and 2.6(a) of the NY RMA, which require the involvement and presence of both Humm and Guidara. Thus, since SFTD failed to perform under the Agreement, Broadway Tenant argues that it had no obligation to pay these fees.

It is undisputed that, on July 29, 2019, Humm and Guidara publicly announced the end of their business relationship, and after that date, Guidara was no longer involved in managing the NoMad Hotel's food and beverage facilities. (NYSCEF 77, JSUF ¶10; NYSCEF 173, SFTD Response ¶¶81-82 [undisputed]; *see also* NYSCEF 183, tr at 46:3-18, 47:14-50, 48:23-25, 49:2-5 [Guidara depo].) It is also clear that the terms of the NY RMA require both Guidara and Humm to be regularly present at the

NoMad Hotel. (NYSCEF 104, NY RMA at 18-19, 26-28 [§§1.1(b) ("Manager shall cause Guidara and Humm to be at the Food and Beverage Facilities on a regular and consistent basis, and to actively and personally oversee the operation and development (jointly with Owner) of the Food and Beverage Facilities"), 2.6(a) (Manager shall be solely responsible and liable for … causing Guidara and Humm to actively and personally oversee the operation and development of the Food and Beverage Facilities and Manager Provided Services")].) Thus, the issue is whether Broadway Tenant was obligated to pay SFTD's management fees while the food and beverage facilities continued to operate after Guidara's departure. Specifically, whether they elected to continue performance under the Agreement or waived any breach of the Agreement caused by Guidara's admitted departure.

"Under the election of remedies doctrine, a party, upon learning of a material breach of a contract, must choose between terminating the contract and continuing performance. The innocent party has a reasonable time to make the election." (*Parlux Fragrances, LLC v S. Carter Enters., LLC*, 204 AD3d 72, 86 [1st Dept 2022] [citations omitted].) Here, an issue of fact exists as to whether Broadway Tenant's conduct following Guidara's departure "amounted to an election…to affirm the contract." (*Id.*) Although Broadway Tenant admits to negotiating to keep Humm "in place" (NYSCEF 129, tr at 152:7-153:24 [Zobler[8] Depo]), it cannot be determined on this record, as a matter of law, that by doing so there was an election to continue to perform under the existing Agreement during that time period.

---

[8] Andrew Zobler is the founder of Sydell.

There are also issues of fact as to whether Broadway Tenant waived enforcement of Sections 1.1(b) and 2.6(a) by accepting SFTD's continued performance by Humm alone.

Section 23 of the NY RMA provides that "[n]o provision of this Agreement shall be deemed to have been waived by Owner or Manager, unless such waiver is in writing and signed by such party." (NYSCEF 104, NY RMA at 46 [§23].) There is no evidence of such a writing. Nevertheless, "a contracting party may orally waive enforcement of a contract term notwithstanding a provision to the contrary in the agreement. Such waiver may be evinced by words or conduct, including partial performance." (*Bank Leumi Trust Co. v Block 3102 Corp.*, 180 AD2d 588, 590 [1st Dept 1992] [citations omitted], *lv denied* 80 NY2d 754 [1992].)

> "Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned …. Such abandonment may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage …. However, waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection …. Generally, the existence of an intent to forgo such a right is a question of fact." (*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96, 104 [2006] [internal quotation marks and citations omitted].)

While the evidence shows that Broadway Tenant was aware of issues with Guidara and Humm's professional relationship and offered to assist Humm in buying Guidara out (*see* NYSCEF 94, Email from Sydell to Humm), this email does not conclusively establish as a matter of law that Broadway Tenant knowingly, voluntarily, and intentionally abandoned its contractual right to require that Guidara be present as Zobler, the email's author, stated that Humm would "need a lot of consents to get this done." (*Id.*) Zobler also testified that Broadway Tenant "entertained" the idea of Humm

continuing to operate the NoMad Hotel food and beverage facilities after Guidara's departure and started to negotiate a new business arrangement but "at some point it became clear that what we kind of were prepared to do was not acceptable to [Humm]." (NYSCEF 129, tr at 152:7-18 [Zobler Depo].)  Thus, SFTD was terminated.  (*Id.* at 152:18-22; NYSCEF 150, Notice of Termination.)  Again, it cannot be determined on this record that Broadway Tenant's negotiation with Humm, while the operations of the NoMad food and beverage facilities continued, was a manifestation of "a clear intention to relinquish" Broadway Tenant's right to enforce Sections 1.1(b) and 2.6(a).  (*Parlux Fragrances, LLC*, 204 AD3d at 87 [citation omitted].)

*Operating Expenses*

Prior to opening, SFTD established an operating account over which it had exclusive signing authority.  (NYSCEF 104, NY RMA at 40 [§ 17.1].)  The operating expenses of the food and beverage facilities were to be paid out of the operating account "funded primarily by gross sales of the food and beverage facilities, in accordance with an approved budget."  (NYSCEF 173, SFTD Response ¶ 15 [undisputed]; see also NYSCEF 104, NY RMA at 40 [§§ 17.1, 17.3].)  Section 17.4(a) provides that "[n]othing in this Agreement shall be construed as to require [SFTD] to provide its own funds for the provision of Manager Provided Services or the operation of the Food and Beverage Facilities."  (NYSCEF 104, NY RMA at 40 [§ 17.4(a)].)  SFTD was to maintain adequate funds in the operating account to pay for day-to-day expenses in accordance with an approved budget. (*Id.* [§ 17.1].)  Broadway Tenant was to fund shortfalls in the operating account.  (NYSCEF 173, SFTD Response ¶ 15 [undisputed]; *see also* NYSCEF 129, tr at 57:11-14, 57:20-58.3 [Zobler Depo]

[* 9]

["operating expenses were the money would come in from revenues and operating expenses would be paid from the operating account"... "it definitely was owner's obligation to fund deficits"].)

SFTD asserts that it is owed $194,181 in general operating expenses. To support its claims, SFTD submits a spreadsheet prepared by Marcia Regen, Chief Financial Officer of SFTD's parent company, Make it Nice Hospitality (II), LLC. (NYSCEF 81, Updated Spreadsheet; NYSCEF 79, Regen aff ¶ 1.) However, it also cannot be determined on this motion whether SFTD is entitled to these expenses because of the triable issues of fact as to Broadway Tenant's waiver, as discussed *supra*.

Although the court is not making any determination as to these operating expenses, it notes that it is unclear from the record why the operating account did not have enough funds to cover these operating expenses considering the food and beverage facilities were allegedly profitable. (NYSCEF 90, tr at 40:21-24 [Zobler Depo] ["up until like COVID, like there was always money [in the operating account] because the food and beverage was very profitable"]; NYSCEF 88, tr at 76:5-8 [Nugent[9] Depo] ["Q: Were the food and beverage operations of the New York NoMad profitable? A. Yes"].) It is also unclear why SFTD allegedly funded these operating expenses and not Broadway Tenant. (NYSCEF 173, SFTD Response ¶ 12 [undisputed] [Under the NY RMA, Broadway Tenant was required to fund all operating expenses]; *see also* NYSCEF 84, tr at 207:12-14 [Regen Depo] [We were given a stipend for operating

---

[9] Bradford Nugent is a partner at Yucaipa Companies, LLC, one of Broadway Tenant's controlling owners. (NYSCEF 115, Nugent aff ¶ 1.)

expenses"]; NYSCEF 104, NY RMA at 40 [§17.4(a)] ["Nothing in this Agreement shall be construed as to require [SFTD] to provide its own funds for the provision of Manager Provided Services or the operation of the Food and Beverage Facilities"].)

Finally, there is the issue of whether SFTD is entitled for reimbursement of the class action settlement payment as SFTD asserts that it qualifies as an operating expense.

Operating expenses are defined as all expenses actually incurred by Manager ... for the operation of the Food and Beverage Facilities including, without limitation...(xx) "[SFTD]'s accounting, legal and other professional fees to the extent reasonably required in connection with the operation of the Food and Beverage Facilities (including the costs of defense, settlement and judgments with respect to legal actions)." (*Id.* at 13-14.) Here, SFTD seeks reimbursement of the payment to the class action plaintiffs, settling the claim that SFTD charged "special events customers an automatic 'administrative fee' that was not paid to employees as a gratuity, and that [SFTD] failed to adequately disclose this fact in special event receipts, order forms, and contracts presented to those customers." (NYSCEF 173, SFTD Response ¶ 35 [undisputed].) A question of fact exists as to whether the legal costs arising from an alleged violation of labor laws are expenses reasonably required in connection with the operation of the food and beverage facilities.

[* 11]

Broadway Tenant asserts that SFTD's noncompliance with New York Labor and Wage law is a breach under Section 6.1[10] of the NY RMA which requires SFTD to indemnify Broadway Tenant against any settlements under Section 34.1(b).[11]

However, there was no finding that SFTD did not comply with all the requirements applicable to the food and beverages facilities as required by Section 6.1, and thus, Section 34.1 (b) (i) is not triggered. Further, whether SFTD's alleged conduct rose to the level of gross negligence (*see* Section 34.1 [b] [ii]) also presents an issue of fact that cannot be determined on this record.

All remaining arguments were considered and do not alter the result.

Accordingly, it is

ORDERED that plaintiff's motion for summary judgment (mot. seq. no. 002) is denied; and it is further

ORDERED that defendant's motion for summary judgment (mot. seq. no. 003) is denied; and it is further

---

[10] Section 6.1 provides, in relevant part, that SFTD "shall comply with all Requirements applicable to the Food and Beverage Facilities." (NYSCEF 104, NY RMA at 31.) Requirements is defined as "all present and future laws, rules, orders, ordinances, regulations, statutes ... ."

[11] Section 34.1 (b) provides that "Manager will defend, indemnify and hold Owner, its members, officers, directors, employees, subsidiaries and affiliates (each, an 'Owner Indemnified Party') harmless from, against and in respect of any Losses which may be suffered or incurred by an Owner Indemnified Party as the result of any third party claim, suit or proceeding brought or threatened against Owner Indemnified Party based upon or arising out of (i) the breach of any of Manager's covenants contained in this Agreement, (ii) Manager's grossly negligent acts or omissions or willful misconduct in the performance of its services hereunder; provided, however, that the foregoing indemnity shall not apply to Losses based upon or arising out of Owner's grossly negligent acts or omissions or willful misconduct in the performance of its services hereunder."

[* 12]

ORDERED that the parties are to appear for a trial scheduling conference on

January 29, 2025 at 10 a.m.

| 12/15/2024 | | ANDREA MASLEY, J.S.C. |
|---|---|---|
| DATE | | |

CHECK ONE:

| | CASE DISPOSED | X | NON-FINAL DISPOSITION |
|---|---|---|---|
| | GRANTED | X DENIED | | GRANTED IN PART | | OTHER |

APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER |

CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |